Abraham **FRUCHTHANDLER**, Plaintiff,

v.

Gerald W. **BLAKELY**, Jr., et al., Defendants.

No. 75 Civ. 1814 (HFW).

United States District Court,
S. D. New York.

Sept. 7, 1976.

As Amended Sept. 29, 1976.

Stull, Stull & Brody, New York City by Robert A. Stull, New York City, of counsel, for plaintiff.

Milbank, Tweed; Hadley & McCloy, New York City by Adlai S. Hardin, Jr., Sharon W. Lindsay, New York City, of counsel, for defendant Chase Manhattan Bank, N. A.

Simpson, Thacher & Bartlett, New York City by William J. Manning, Charles E. Koob, Edward Nowak, New York City, of counsel, for all other defendants.

## OPINION

WERKER, District Judge.

This is a Rule 10b–5 action brought by plaintiff (Fruchthandler) against the trustees and former trustees (trust defendants) of the Chase Manhattan Mortgage and Realty Trust (Trust) and The Chase Manhattan Bank, N.A. (Bank). The action is based upon the alleged failure of the Trust and trust defendants to make certain material disclosures in the periodic reports of the Trust issued from September 1, 1973 to August 28, 1974. The Bank is included as a defendant because as the investment adviser it allegedly had an interest in and conspired with the Trust in the alleged, material omissions.

Plaintiff, after some preliminary discovery, has brought this motion for class action certification under Rule 23 of the Federal Rules of Civil Procedure and Rule 11A of the Civil Rules of this Court.

Plaintiff purchased 1000 shares of the Trust on June 19, 1974. His purchases were made on the New York Stock Exchange (NYSE). He paid 23½ for 500 shares, 23⅜ for 200 shares and 23¼ for 300 shares. He asks that a class be certified consisting of all other shareholders of the Trust similarly situated who purchased their shares on the NYSE during the period September 1, 1973 to August 28, 1974.

The publications of the Trust upon which plaintiff grounds his action are the following:

1. The First Quarter Report dated August 31, 1973 and sent to the shareholders of the Trust on or about October 31, 1973;

2. The Mid-year Report dated November 30, 1973 and sent on or about January 31, 1974;

3. The Nine-months Report dated February 28, 1974 and sent on or about April 25, 1974; and

4. The three press releases issued by the Trust which announced the financial information set forth in these three quarterly reports dated September 28, 1973, December 20, 1973 and March 21, 1974.

It is alleged that all of these reports and releases misrepresented the financial condition of the Trust and failed to disclose the alleged facts that the provision for possible losses was inadequate and that the Trust failed to write off or write down loans which were in default in the payment of principal or interest.

At the time of his purchase on June 19, 1974 plaintiff had never received or reviewed any of the reports or releases issued by the Trust with the possible exception of the April 25, 1974 Nine-months Report.

Plaintiff's claims are consequently based solely upon the effect which each of the alleged misleading reports or releases had upon the "market climate" for the securities of the Trust. Plaintiff asserted that his broker related to him the "highlights" of the previous quarter "such as dividends paid, earnings for the year, and increases in loan portfolios and commitments." Upon receipt of this information and without in-

vestigation as to investment policy or of the types of investments made by the Trust and apparently without inquiry as to the source of his broker's information he invested in the Trust's common stock.

Plaintiff has, since August 28, 1974, invested further in the common shares of the Trust although he presently makes no claim as to that further investment.

It is apparently undisputed that between the dates of September 4, 1973 and August 28, 1974 the closing price per share of the common stock of the Trust on the NYSE were as follows:

| Date | Closing Price |
| --- | --- |
| September 28, 1973 | 58-3/4 |
| October 31, 1973 | 54-1/2 |
| November 21, 1973 | 42 |
| December 20, 1973 | 40-7/8 |
| January 31, 1974 | 37-3/8 |
| March 21, 1974 | 37-1/2 |
| April 11, 1974 | 29-3/8 |
| April 25, 1974 | 25-3/8 |
| June 19, 1974 | 22-5/8 |
| June 20, 1974 | 18-1/2 |
| July 31, 1974 | 14 |
| August 26, 1974 | 12-5/8 |
| August 28, 1974 | 8-7/8 |

There is also no question that the effect of the reports and press releases of the Trust was to depress the price of the shares from a high of 58¾ on September 28, 1973 to 22⅝ on June 19, 1974 and subsequently to a low of 8⅞ on August 28, 1974.

The plaintiff has the burden of demonstrating that all of the requirements of Rule 23(a) and one or more of subsections, 1, 2 or 3 of Rule 23(b) are satisfied.

Rule 23(a) requires that:

"(1) The class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class."

Plaintiff further claims that this action meets the requirements of subsection (3) of Rule 23(b) which provides in relevant part that a class action may be maintained if

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

There is no dispute with respect to subdivision (1) and (4) of Rule 23(a) nor is there any dispute that a class action is a superior method for adjudicating claims of the kind raised by plaintiff.

The contentions raised by defendants in this motion to certify a class are threefold:

·1. There are not questions of fact which are common to all of those who purchased during the alleged class period;

2. The plaintiff's claims are not typical of those of any other shareholder;

3. To the extent that there are common questions of fact and that the plaintiff's claim is typical of other shareholders, this is true only with respect to a class period of April 25, 1974 to June 19, 1974.

Although the determination of a class action motion is not concerned with the ultimate determination of the merits, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the bare bones of the complaint are sometimes insufficient to ascertain the positions of the parties and definition by discovery is required. *Huff v. N. D. Cass Co.*, 485 F.2d 710 (5th Cir. 1973); *Polak v. Noel Industries, Inc.*, 64 F.R.D. 333 (S.D.N.Y.1974). This was such a case in my opinion and, as a result, the determination of the motion was held in abeyance pending completion of plaintiff's deposition and interrogatories addressed to the Trust and Bank.

An analysis of those items of discovery which have been furnished to the court indicates that indeed Fruchthandler appears to have relied upon the Chase name, his broker's highlights which probably re-

sulted from the April 25, 1974 Nine-months Report and possibly that report.

The Trust makes the point that the factors affecting the market in which it was dealing were constantly changing during the whole period. Certainly this is so. I cannot find as is so often the case in actions involving securities frauds that there was a continuing course of action throughout the alleged class period which through accounting practices continued the fraud.

The omissions allegedly causing the inflated price was one of a failure to make adequate provision for loss which would have resulted in a smaller net profit and a lesser dividend to stockholders. However, the conditions which were affecting the Trust's borrowers, the fluctuating interest rates and the conditions affecting the real estate industry were constantly changing during these periods. These factors go to the issue of scienter and determine the defendants' duty to disclose and when that duty arose.

■ While I can see common questions of fact during the period April 25, 1974 to June 19, 1974, I do not read into the statements and reports furnished to me the essential continuity of omissions and material misrepresentations necessary to bring the entire alleged period of September 1, 1973 to August 28, 1974 within the scope of this action. Where the plaintiff alleges omissions from several documents published over a period of time, he must show at least a common thread which unites the several documents into one common course of action. *See Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y.1974).

It is fairly obvious that purchasers of the Trust's shares in the period September 1, 1973 to September 27, 1973 could not be represented by plaintiff since the first document allegedly relied on by him is one which was disseminated by the Trust on September 28, 1973 and those who purchased before its publication could not have been misled by it. *See Aboudi v. Daroff*, 65 F.R.D. 388, 394 (S.D.N.Y.1974).

■ The same is true of those who purchased subsequent to the June 20, 1974 release. On June 20 the Trustees announced that they had postponed the quarterly meeting and were awaiting a report of the auditors regarding the adequacy of the loan loss reserve. On July 31 they increased the loan loss reserve by 300%, adding nine million dollars to it. Finally on August 26 the Trust announced that its audited net income for the year ending May 31, 1974 was less than half its 1973-year end figure and again increased the loan loss reserve by two million dollars. The purchasers in the period of June 20, 1974 to August 28, 1974 purchased in a steadily declining market. In a nondisclosure case, the plaintiff's claim is typical only of those who purchased before he did since he must argue that the defendant's duty to disclose arose prior to his purchase. *Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 41 (S.D.N.Y.1975). Plaintiff cannot represent anyone who purchased after June 19, 1974. *In re Memorex Security Cases*, 61 F.R.D. 88 (N.D.Cal.1973); *Stull v. Baker*, CCH Fed.Sec.L.Rep. ¶ 94,227 at 94,928 (S.D.N.Y.1973).

■ Furthermore the plaintiff's position is patently in direct conflict with the position of those who purchased prior to April 25, 1974 when it was disclosed that the loss reserve had been increased by 150%. They would undoubtedly take the position that if this disclosure had been made earlier it would have depressed the market in which they purchased and materially influenced their decision to invest. Fruchthandler on the other hand must establish that this disclosure was unduly positive and inflated the market price at which he purchased to his damage. *See Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y.1974). If there are real or potential conflicts within a class, the motion to certify that class must be denied. *Carrol v. American Federation of Musicians*, 372 F.2d 155 (2d Cir. 1967), *vacated and remanded on other grounds*, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1963); *Lamb v. United Security Life Co.*, 59 F.R.D. 25 (S.D. Iowa 1972); *Barbot v. Frackman*, 191 F.Supp. 171 (S.D.N.Y.1961).

I am not persuaded that Fruchthandler's claims would not be typical of any other purchaser for the period April 25, 1974 to June 19, 1974 because his decision to purchase was based upon the yield in prior years and that fact may very well have been the motivating factor for him as well as for others. If the yield revealed in the Nine-months Report of April 25, 1974 was affected by defendants' failure to establish an appropriate loan loss reserve it could be the causal factor which must be present in cases of omission, *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 380 (2d Cir. 1974), or the material fact which gives rise to a presumption of reliance. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 150–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154 (S.D.N.Y.1974).

▮ These issues must of course be left to the trial but they constitute common questions of fact as well as the requisite typicality. As thus narrowed I can certify a class which purchased the Trust's shares during the period April 25, 1974 to June 19, 1974.

Plaintiff has met all of the requirements of Rule 23 and a class consisting of all those persons who purchased the common stock of Chase Manhattan Mortgage and Realty Trust between April 25, 1974 and June 19, 1974 will be certified.

Within 30 days from the date of this order plaintiff is to complete discovery as to the names and addresses of class members and to submit an order in accordance with this decision and in the form recommended in the Manual for Complex Litigation, Part 2, § 1.45 together with a form of notice and a form of exclusion request.

SO ORDERED.