Harry LEWIS

v.

**CAPITAL MORTGAGE INVESTMENTS et al.**

**Civ. A. No. N–75–1094.**

United States District Court, D. Maryland.

Sept. 6, 1977.

On Motion for Protective Order March 14, 1978.

Robert A. Stull and Jules Brody, New York City, and Irving Dross, Langley Park, Md., for plaintiff.

Joseph G. Finnerty, Jr., Henry R. Lord and Francis B. Burch, Jr., Baltimore, Md., for all defendants except Coopers & Lybrand, John G. Ammons and Arthur L. Wescott.

John Henry Lewin, Jr. and Alan D. Yarbro, Baltimore, Md., for defendant Coopers & Lybrand.

NORTHROP, Chief Judge.

Plaintiff, Harry Lewis, has filed this action pursuant to 15 U.S.C. § 78aa (1970), alleging that defendants[1] have violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970) and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1976), by inducing him to purchase shares of Capital Mortgage Investments (CMI) stock at an inflated price through false and misleading statements and omissions in CMI's financial reports. In addition, plaintiff has moved, pursuant to Fed.R.Civ.P. 23, for certification of this suit as a class action and has filed a memorandum in support thereof. He seeks to represent those persons who purchased CMI common stock between January 11, 1974 and November 11, 1974 as a result of the false and misleading statements or material omissions in CMI's financial reports. Defendants oppose plaintiff's motion and have filed a memorandum in opposition.[2] Defendant Coopers & Lybrand has filed a separate memorandum in opposition. Plaintiff has replied to both memoranda. On March 25, 1977, the Court held a hearing at which counsel for both sides presented legal arguments, and the plaintiff and Mr. Richard Coor, Financial Vice-President for CMI testified. The Court held this motion *sub curia* to allow proper consideration of the difficult issues which it presents.

## I. *Factual Background*

■ On June 7, 1974, plaintiff purchased 35 shares of CMI common stock on the New York Stock Exchange at approximately

---

1. Named defendants in this action are: Capital Mortgage Investments, Capital Managers, Inc., Capital Equities, Inc., William N. Demas, Carey Winston, Richard A. Kohr, Richard S. Beatty, Robert K. Withers, M. Robert Wolfe, Walter D. Pinkard, Charles K. Koones, III, William R. Morris, Jr., John W. Steffey, Sidney H. Tinley, Jr., John G. Ammons, Arthur L. Wescott, Herbert Korner, Charles C. Hogg, and Coopers & Lybrand. Service of process has never been effected as to John G. Ammons, and, while suit papers have been served on Arthur L. Wescott, he has not filed an answer.

2. This memorandum was filed on behalf of all defendants except John G. Ammons, Arthur L. Wescott and Coopers & Lybrand.

$9⅜ per share. Subsequently, on July 7, 1974, he purchased another 40 shares at approximately $5 per share. Plaintiff alleges that these prices were inflated beyond the actual value of the stock by misleading statements and omissions in CMI's financial statements.[3] Specifically, plaintiff alleges that CMI's annual report for 1973, issued on January 10, 1974, overstated net earnings and dividends primarily because it failed to provide adequate reserves for possible loan losses[4] in light of the existing circumstances.[5] These circumstances included the serious difficulty and default of many of CMI's borrowers, the rising interest rate impeding CMI's acquisition of funds and the speculative nature of many of CMI's loans. Plaintiff further alleges that defendants made these misrepresentations in the first and second quarter reports for 1974, which were reported on April 10, 1974 and July 10, 1974, respectively.[6] On November 11, 1974, CMI disclosed that losses for the first three quarters of 1974 were $2,145,082 and retroactively increased its allowance for possible loan losses by $3,409,891. CMI also notified its shareholders that dividends paid in 1974 were charged to additional paid-in capital.[7] Plaintiff filed this action on June 23, 1975, in the United States District Court for the District of New York. By consent order dated July 25, 1975, this case was transferred to this Court pursuant to 28 U.S.C. § 1404(a) (1970).

## II. *Legal Background*

Rule 23 of the Federal Rules of Civil Procedure delineates the prerequisites for a class action. It provides that:

3. The Court is bound to accept the factual allegations as true, at least to the extent that they are not contradicted by the evidence submitted by the parties. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

4. In his memorandum plaintiff states that the annual report indicated earnings of $4,437,476 or $2.47 per share, mortgage loans and investments totaling $150,155,387 and loan loss reserves of $631,565.

5. Plaintiff also alleges that defendants distorted earnings by reporting earned income accrued

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Before the Court can certify a class action, plaintiff must demonstrate that each of the prerequisites of Rule 23 has been satisfied.

interest on loans considered to be delinquent and failed to disclose that no independent appraisal of its mortgage portfolio had been made.

6. On June 30, 1974, the reserve for loan losses was $1,000,000.

7. CMI also announced changes in the valuation of its outstanding loans and its accounting practices concerning accrual interest income on outstanding loans.

*Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

### III. *Defendants' Memorandum in Opposition to Class Action Certification*

#### A. *Numerosity*

■ At oral argument plaintiff asserted, and defendants did not contest, that the proposed class numbers approximately 5,000–6,000 shareholders. This number is sufficient to satisfy the requirement that joinder be impracticable. *Green v. Wolf Corp., supra* at 298.

#### B. *Typicality*

Although the precise meaning of the term typicality is unclear, most courts have interpreted it as requiring that the class representative's claims present issues common to the class and that his positions concerning those issues is not antagonistic to the positions of the other class members. *See Mersay v. First Republic Corp.*, 43 F.R.D. 465, 468–469 (S.D.N.Y.1968).

Defendants argue that plaintiff's claims are not typical because the elements of his claim differ from those of other members of the class who purchased at different times. They suggest that plaintiff need only prove that the financial report immediately preceding his purchase contained material misrepresentations and that, therefore, he need not present evidence concerning other financial reports issued during the proposed class period.

In *Weiss v. Tenney*, 47 F.R.D. 283 (S.D.N.Y.1969), the court rejected an almost identical argument. In *Weiss*, defendants argued that plaintiff's claims were not typical because he could recover full damages by proving misstatements in certain monthly communications and an annual report. They contended that, consequently, plaintiff had no inducement to prove misstatements in a registration statement that was issued during the class period and on which certain class members had to rely to recover. The court held that this circumstance did not preclude a finding of typicality because all of the misstatements were similar and were alleged to have occurred through a common course of conduct. The court concluded that therefore proof of plaintiff's allegations would benefit all members of the class. *Id.* at 292 n.5.

■ Defendants' argument also conflicts with decisions of several other courts in similar circumstances that such arguments represent an unduly restrictive interpretation of the typicality requirement. For example, in *Green v. Wolf Corp., supra*, plaintiff alleged that three prospectuses issued during a 16-month period inflated the price of defendants' stock by misstating the cash available for distribution to the shareholders. The court held that although plaintiff purchased his stock after issuance of the third prospectus, his claims were typical of purchasers before the issuance of the third prospectus. *Id.* at 299. Similarly, in *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.1974), defendants contended that plaintiff could not represent a class of purchasers from December 10, 1969 to March 14, 1972, because of the considerable fluctuation in the market price during that period. The court stated that this argument improperly focused on the stock rather than the course of action of the defendants. The court held that plaintiff's allegations that throughout the entire period defendants issued interrelated reports and statements which were false and misleading stated a claim typical of the claims of the proposed class. *Id.* at 391. Finally, in *Byrnes v. IDS Realty Trust*, 70 F.R.D. 608 (D.Minn.1976), plaintiffs alleged that from August 1974 to April 1975 defendants inflated the market price of IDS stock by overstating earnings and understating loan loss allowances in a series of press releases and annual reports. Based on these allegations, the court held that plaintiffs' claims were not atypical merely because the representative plaintiffs had purchased their stock at different times than some members of the class. *Id.* at 612.[8] *Accord, Lewis v. Black*, No. 75 C 301

---

8. In support of their argument defendants cite *Fruchthandler v. Blakely*, 73 F.R.D. 318 (S.D.N.

Y.1976), in which the court refused to allow a plaintiff who had purchased stock after partial

(E.D.N.Y. September 21, 1976). *Contra, Amswiss International Corp. v. Heublein Corp.*, 69 F.R.D. 663, 667 (N.D.Ga.1975); *Robinson v. Penn Central Co.*, 58 F.R.D. 436, 443 (S.D.N.Y.1973). In the present case, plaintiff alleges that in a series of press releases and quarterly and annual reports defendants overstated earnings by fraudulently understating the allowance for loan losses. The court finds that these facts are indistinguishable from those in the cases discussed above. Therefore, plaintiff has satisfied the requirement of Rule 23(a)(3) that his claims be typical of the claims of the class.

### C. Adequate Representation

Defendants also challenge the ability of plaintiff to adequately represent the proposed class. They have attached to their memorandum complaints from six separate class action security fraud cases that plaintiff has filed within the last year. They assert that the similarity between these complaints and the complaint in this case demonstrates that plaintiff has little personal knowledge of the matters alleged in the suit with which to assist counsel in presenting this case. They also question the quality of representation being provided by plaintiff's counsel because of the boilerplate contained in the complaints. Finally, they state that the large number of class action security cases in which plaintiff currently is involved may prevent him from providing vigorous representation in this case.

█ The requirement that plaintiff adequately represent the class has two components. First, the interests of the plaintiff and the other members of the class must coincide. *Feldman v. Lifton*, 64 F.R.D. 539, 549 (S.D.N.Y.1974); *Mersay v. First Republic Corp.*, 43 F.R.D. 465, 469 (S.D.N.Y.1968). Second, it must appear that plaintiff and his attorney will vigorously prosecute the action. *Id.*

Plaintiff has satisfied both of these requirements. The Court's discussion concerning typicality delineates plaintiff's compliance with the requirement that his interests coincide with those of the other class members. In regard to the second requirement, the Court notes that in these proceedings plaintiff's counsel have conducted themselves in a professional manner and demonstrated competence in the area of securities law. Furthermore, plaintiff's counsel have filed an affidavit outlining their qualifications and experience, as suggested in *Blumenthal v. Great American Mortgage Investors*, 74 F.R.D. 508 (N.D.Ga. 1976), cited by defendants. The affidavit states that the law firm representing plaintiff has engaged in securities litigation for approximately 15 years. This statement is supported by the participation of plaintiff's counsel in many of the cases cited by both sides in their memoranda.

The Court cannot accept defendants' argument that the similarities among the complaints recently filed by plaintiff indicate he and his counsel would not provide adequate representation for the class. The factual situation underlying the complaints are all quite similar. It is only natural that the complaint also would be similar. It is not improper to use the same basic form in drafting complaints involving similar facts, if, as here, counsel modifies the complaints to conform to the particular facts of the case. Forms are an integral part of the legal profession. Indeed, it would be a useless gesture for counsel to draft each complaint differently merely for the sake of diversity. *Cf. Locklear v. Mathews*, 424 F.Supp. 639, 647 (D.Md.1976). Nor can the Court infer from the similarities between the complaints that plaintiff lacks personal knowledge of the facts of this case. The complaint is sufficiently detailed concerning

---

disclosure of an inadequate loan loss allowance to represent persons who purchased before the disclosure. Since plaintiff in this case seeks only to represent persons who purchased before disclosure, *Fruchthandler* is distinguishable. Furthermore, in another case cited by

defendants, *Trattner v. American Fletcher Mortgage Investors*, 74 F.R.D. 352 (S.D.Ind. 1976), the court held under similar circumstances that plaintiff had satisfied the typicality requirement.

the particular facts of this case to satisfy the Court that plaintiff will provide adequate representation.

The Court finds equally unfounded defendants' contention that the large number of class actions in which plaintiff currently is engaged will prevent him from vigorously prosecuting this case. Plaintiff demonstrated his interest in prosecuting this action by traveling from New York City to Baltimore when the Court required his presence at the hearing on this motion.

Finally, the Court rejects defendants' suggestion that the relatively insubstantial value of plaintiff's claim may prevent him from adequately representing the class. *Accord, Denny v. Carey*, 73 F.R.D. 654 (E.D. Pa.1977). As the Court stated in *Dolgow v. Anderson*, 43 F.R.D. 472, 495 (S.D.N.Y. 1968), to preclude persons with minute interests from bringing class action would contradict the spirit of Rule 23. "[T]he main purpose of the class action is to provide a means of vindicating small claims." *Id.* Moreover, the minute nature of plaintiff's claim is not likely to discourage plaintiff's counsel from exercising every effort to succeed since his fees depend upon a successful result. *See id.* The Court finds defendants' citation of *Richland v. Cheatham*, 272 F.Supp. 148 (S.D.N.Y.1967), unpersuasive. Although the court did consider the miniscule interests of the plaintiffs in that case, its decision not to certify the class rested primarily on plaintiff's failure to establish their membership in the proposed class. *Id.* at 153, 154. Moreover, the court stated that "if it is found that the plaintiffs before the Court can in fact and are willing to represent numerous other people similarly situated, then their suit is entitled to class treatment irrespective of the size of their particular interest." *Id.* at 153. In this case, plaintiff is willing and able to represent the interest of the members of the proposed class.

■ For the above reasons, the Court holds that plaintiff has satisfied the requirement of Rule 23(a)(4) that he provide adequate representation for the class.

### D. *Common Questions and Predominance*

Although the parties differ concerning compliance with each of the requirements of Rule 23 except numerosity, the crux of the dispute concerns the requirements of Rules 23(a)(2) and 23(b)(3) that the complaint present questions of law or fact common to the class and that these questions predominate over any questions affecting only individual members. In his complaint plaintiff asserts that the common questions of law and fact involved in this suit are:

(a) Whether CMI's financial statements, quarterly and other reports required by law, and other reports disseminated to its stockholders and the financial community by the defendants on or about and between January 10, 1974 and October 11, 1974, contained false or misleading statements or material omissions with respect to CMI's earnings and financial condition in that they omitted to disclose therein that CMI had not set up adequate reserves for losses they well knew or should have known CMI had and would sustain;

(b) Whether defendants artificially inflated the market price for CMI shares or created an artificial market climate therefor in said period;

(c) Whether plaintiff and other members of the class similarly situated were induced to purchase CMI shares by the wrongful acts and material omissions of the defendants complained of;

(d) Whether the wrongful acts and material omissions of the defendants complained of constituted violations of the Act and the Rules and Regulations of the SEC applicable thereto; and

(e) Whether plaintiff and other stockholders of CMI similarly situated were damaged by the wrongful acts and material omissions of the defendants complained of.

Defendants' challenge to plaintiff's compliance with Rule 23(a)(2) is twofold. Initially, they assert that the bald conclusory allegations in the complaint do not provide sufficient factual detail to establish that there are questions common to the class. They rely on *Feldman v. Lifton, supra*, in

which the court struck the class allegations in the complaint because plaintiff did not provide "sufficient factual detail to establish that there [were] any questions of law or fact common to the class." *Id.* at 544. Defendants also assert that the misrepresentations alleged by plaintiff are not interrelated and therefore do not present common questions of law or fact. They recognize the general rule that a securities fraud perpetrated by using similar or identical misrepresentations is an appropriate subject for a class action. However, they cite several cases which have held that statements in various documents reflecting different judgments based on changing economic circumstances do not provide the common strand of misrepresentation necessary for a class action. *See, e. g., Trattner v. American Fletcher Mortgage Investors,* 74 F.R.D. 352 (S.D.Ind.1976); *Fruchthandler v. Blakely,* 73 F.R.D. 318 (S.D.N.Y. 1976); *Segal v. Coburn Corp.,* CCH Fed.Sec. L.Rep. ¶ 94,002 (E.D.N.Y.1973).

The factual allegation in the complaint and in plaintiff's responses to interrogatories belies defendants' assertion that plaintiff has not provided sufficient factual detail for determination of this motion. In *Feldman v. Lifton, supra,* the court, after denying plaintiff's motion for class action certification, delineated the proper approach for establishing compliance with the requirements for a class action. *Id.* at 547. It instructed plaintiff to submit copies of the allegedly fraudulent documents and to specify the allegedly false statements in the documents. *Id.* In this case plaintiff has substantially complied with the approach delineated in *Feldman.* In his complaint, plaintiff identifies the alleged misleading documents as the annual report for 1973, the quarterly reports for the first and second quarters of 1974, and forms 10K and 7Q for 1973 and 1974. The complaint further states that the earnings reported in these documents were overstated because defendants provided an inadequate allowance for bad loans. More specifically, the

complaint states that in the annual report for 1973 defendants provided only a $631,-535 reserve for loan losses for $150,155,387 in mortgage loans. It further states that of the $33,055,988 of CMI's mortgage portfolio which was either extended, restructured or delinquent at the time, only $6,209,000 was disclosed as such. Plaintiff's responses to interrogatories provide even further factual detail. In response to Interrogatory 11, plaintiff identifies each of the reports included in this action and the false and misleading statement contained therein.[9] Although plaintiff has not provided copies of the documents, he has provided sufficient detail for this Court to determine that the alleged misrepresentations are sufficiently similar and related to present common questions of fact and law that predominate over individual questions.

Similarly, the Court cannot accept defendants' argument that the complaint does not present common questions because the alleged misrepresentations are unrelated. It is well established that a class action is appropriate in securities fraud cases involving similar or identical misrepresentations even if they are issued at different times. *See, e. g., Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Aboudi v. Daroff,* 65 F.R.D. 388 (S.D.N.Y.1974). Moreover, the courts generally have been quite liberal in certifying class actions in such cases, recognizing that "[i]t is a rare case that involves but one fraudulent statement . . . ." *In re Memorex Security Cases,* 61 F.R.D. 88, 95 (N.D.Calif.1973). For example, in *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975), the court found common questions in a case involving 45 documents that allegedly overstated inventory and failed to create adequate reserves for uncollectible accounts receivable and for contra-actually guaranteed royalty payments. Defendants, as in this case, had asserted that the fluctuating business conditions underlying the claim pre-

---

**9.** The alleged misstatements involved net income, earnings per share, reserves for possible loan losses, accrued interest receivable and

shareholder's equity. Plaintiff also listed the stated figure for each item.

cluded a finding of common questions. The court held that the accounting and legal principles requiring adequate reserves presented a common question. *Id.* at 904. In more general terms, the court stated that common questions were presented whenever "a series of financial reports uniformly misrepresent a particular item in the financial statement." *Id.* at 903. Similarly, in *Aboudi v. Daroff, supra,* plaintiff alleged misrepresentations in several documents during a period of approximately two years. The court held that the different documents relied on by plaintiff did not preclude a finding of common questions because they contained interrelated and cumulatively misleading data. *Id.* at 390. *Accord, Markewich (Lewis) v. Adikes,* 76 F.R.D. 68 (E.D.N.Y.1977) (alleged inadequate statement of loan loss reserves in four financial reports present common questions of law or fact). The court identified the common questions as whether defendants overstated earnings and, if so, whether overstating the earnings inflated the market price of the corporation's common stock. *Id.* at 391.

■ The Court finds common questions in this case similar to those in *Blackie* and *Aboudi.* Although members of the class may have to rely on different economic conditions in establishing the inadequacy of loan loss reserves in the financial report immediately preceding their purchase, they have a common interest in establishing the proper method for determining adequate loan loss reserves. *See Blackie v. Barrack, supra* at 904. Furthermore, although it is not essential for plaintiff to demonstrate inadequate loan loss reserves in financial reports other than the one immediately preceding his purchase, it would benefit him to establish a pattern of understating loan loss reserves. Finally, as in *Aboudi,* the claims of all the members of the proposed class present a common question concerning

whether the failure to provide adequate loan loss reserves inflated the market price of CMI's stock. The Court deems these common questions sufficient to satisfy the requirements of Rule 23(a)(2).[10]

Plaintiff, however, must establish not only that there are common questions but also that these common questions predominate over individual questions. Fed.R. Civ.P. 23(b)(3). Defendants initially assert that the fluctuating conditions underlying the alleged misrepresentations preclude a finding of predominance. They cite several cases involving similar factual circumstances that have so held. *See, e. g., Blumenthal v. Great American Mortgage Investors, supra; Trattner v. American Fletcher Mortgage Investors, supra; Bowe v. First of Denver Mortgage Investors,* No. 75–M–350 (D.Colo. Mar. 16, 1976); *Segal v. Coburn, supra.* The Court recognizes the legitimate concern enunciated in these cases that because of the changing economic conditions, resolution of the claims of each member of the class will involve a different equation depending on the date of his purchase. This concern, however, is less pertinent in this case than in some of the cases cited by defendants because of the shorter time period involved. In *Blumenthal* the proposed class covered a four-year period. Similarly, the class period in *Trattner* covered 27 months during which defendants allegedly issued 47 misstatements. In contrast, the class period in this case covers only ten months and involves misstatements in only three financial reports.

Furthermore, a review of the case authority reveals that the courts certainly have not been consistent in accepting the position urged by defendants. In general, the courts have not been reluctant to certify class actions in securities involving an extended period of time. *See, e. g., Green v. Wolf Corp., supra* (2½ years); *In re Memorex Securities Cases, supra* (11 months);

---

10. Even cases cited by defendants support this ruling. In *Fruchtlander v. Blakely, supra,* the court held that common questions were presented by a claim alleging misrepresentation of loan loss reserves and other financial information in three different prospectuses dur-

ing a three-year period. Similarly, in *Trattner v. American Fletcher Mortgage Investors, supra,* the court held that a claim involving 47 separate statements concerning loan loss reserves during a two-year period presented common questions of law and fact.

*Dolgow v. Anderson,* 43 F.R.D. 472 (S.D.N.Y.1968) (1½ years). More specifically, several courts recently have certified class actions in cases involving facts almost identical to those in this case and rejecting similar arguments that changing economic conditions preclude class action certification. *See, e. g., Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975) (27 months); *Tucker v. Arthur Anderson & Co.,* 67 F.R.D. 468 (S.D.N.Y.1975) (13 months); *Aboudi v. Daroff, supra* (2¼ years). The decision in *Byrnes v. IDS Realty Trust,* 70 F.R.D. 608 (D.Minn. 1976) is representative of the viewpoint of these courts. In *Byrnes,* plaintiffs alleged that defendants disseminated false and misleading financial information which inflated the price of IDS stock. They requested certification to represent purchasers of IDS stock from August 16, 1974 to April 15, 1975, the period during which the alleged false information was disseminated. Defendants contended that common questions of law and fact did not predominate because the misleading statements were issued at different times. *Id.* at 612. In rejecting this contention, the court stated that:

> The primary issue in this action is whether the statements by defendants caused the market price of the Trust's shares to rise so as to encourage investment. The press releases issued by the defendants overstated earnings, loan losses, and non-earning assets. As such, they present a nucleus of facts necessarily common to all members of the class, and, because of the interrelatedness of the statements and their effect on the Trust's profits, the common questions predominate over any individual questions which may arise. [*Id.* at 613].

Similarly, in *Markewich (Lewis) v. Adikes,* 76 F.R.D. 68 (E.D.N.Y.1977), the same plaintiff requested class action certification in a securities case in which a real estate investment trust allegedly inflated the market price of its stock by failing to adequately provide for loan losses. The requested class period was 13 months, with plaintiff's purchase occurring in the middle of the period. In opposition to plaintiff's request, defendants noted the multiple documents issued and the market fluctuation present during the proposed class period. *Id.* at 73. The court certified the proposed class, relying on *Blackie, Aboudi* and *Byrnes. Accord, Lewis v. Black,* No. 75-C-301 (E.D.N.Y. September 21, 1976).

■ These cases persuade the Court that the fluctuating market conditions during the proposed class period do not prevent certification of this class. They do not alleviate entirely, however, the Court's concern that proof of fluctuating market conditions or antagonism between the interests of class members who purchased at different times in reliance on different documents might eventually lessen the desirability of a class action in this case. If these concerns are substantiated during discovery or trial, the Court will not hesitate to exercise its powers under Rule 23(c)(1) to alter or amend the class certification.[11]

Defendants also assert that the individual questions of damages, common law fraud, statute of limitations and reliance predominate over any common questions.

1. *Damages*

■ The courts consistently have rejected the argument that individual damages questions prevent class action certification. *See, e. g., Blackie v. Barrack, supra; Lorber v. Beebe,* 407 F.Supp. 279, 294 (S.D.N.Y. 1975); *Clark v. Cameron-Brown,* 72 F.R.D. 48, 60 (M.D.N.C.1976). This interpretation of Rule 23(b)(3) is consistent with the Advisory Committee Comments accompanying the 1966 amendment, which state that: "[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by

---

11. If these problems arise, they probably could be reduced significantly by limiting the class to purchasers of CMI stock between the date of issuance of the financial report immediately preceding and following plaintiff's purchase.

individuals within the class." Advisory Committee Notes on 1966 amendment to Rule 23, 39 F.R.D. 69, 103 (1966). To accept defendants' argument would emasculate Rule 23, since all class action litigation involves individual questions of damages. *Dolgow v. Anderson,* 43 F.R.D. 472, 490 (S.D.N.Y.1968). Moreover, the Court believes that if the class should prevail, computation of damages probably will involve only the mechanical task of applying a formula to the date and amount of each individual's purchase. *See Blackie v. Barrack, supra* at 905; *Clark v. Cameron-Brown Co., supra* at 60.

### 2. Statute of Limitations

■ Similarly, the Court has little difficulty dismissing defendants' assertion that individual questions concerning the appropriate statute of limitations preclude certification of the class. The courts generally are reluctant to deny class action status merely because defendant might assert an affirmative defense such as the statute of limitations. *Lorber v. Beebe, supra* at 294. In addition, it appears to be unlikely that a statute of limitations issue will ever arise in this case. *See Mills v. Roanoke Industrial Loan and Thrift,* 70 F.R.D. 448, 454–455 (W.D.Va.1975). The limitations period does not begin until the fraud is actually discovered or should have been discovered by the exercise of due diligence. *Newman v. Prior,* 518 F.2d 97, 100 (4th Cir. 1975). This determination is controlled by federal law, *id.* and therefore would apply to each member of the class. In this case it appears that the statute of limitations could not begin to run before November 4, 1974, the date on which CMI's financial difficulties were first disclosed.

■ Plaintiff instituted this suit on August 7, 1975, less than a year later. The Court is unaware of any state statute of limitations imposing less than a one-year limitations period.[12] Therefore, it appears that most, if not all, members of the class would not be barred by the statute of limitations.

### 3. Common Law Fraud

■ Defendants' argument concerning the common law fraud claim, however, presents a more substantial objection to class action certification. As defendants assert, the common law and statutory law of the state in which each member of the class transacted his purchase would govern the common law fraud claims. *Adise v. Mather,* 56 F.R.D. 492, 497 (D.Colo.1972); *Elster v. Baker,* No. 74–709 (M.D.Fla. September 22, 1976). Plaintiff alleges that members of the proposed class "reside in substantially every State . . . ." Since the laws governing common law fraud in the various states are not uniform, *Adise v. Mather, supra* at 497, certification of a class action for the common law fraud claims probably would involve this Court not only in a determination of which state law applies to each class member, but also in an interpretation and application of the laws governing common law fraud for most of the states. The Court is unwilling to undertake this endeavor. It does not believe, however, that this consideration warrants a complete denial of the motion for class action certification. Rather, the Court will exclude the common law fraud claim from class action certification.

### 4. Reliance

Defendants' final contention concerning predomination is that questions of individual reliance will predominate over the common questions presented by plaintiff's claim. They argue that since this case involves primarily misrepresentations, and not omissions, each of the 5,000 to 6,000 members of the class must prove that he actually relied on the alleged misrepresentations. Plaintiff responds by stating that proof of individual reliance is not necessary in this case and that, in any event, individual questions of reliance do not preclude

---

**12.** The state statute of limitations is applicable because there is no federal statute of limitations applicable to actions under Section 10(b) of the Securities Exchange Act of 1934. *Fox v. Kane-Miller Corp.,* 542 F.2d 915 (4th Cir. 1976).

class action certification. Since the courts have divided concerning the necessity of proving reliance and its effect on class action determinations, there is ample authority on both sides of this difficult issue. Several courts simply have held that individual questions of reliance cannot prevent class action certification. *Green v. Wolf Corp., supra* at 301; *Feldman v. Lifton*, 64 F.R.D. 539, 548 (S.D.N.Y.1974); *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 290 (S.D.N.Y.1969); *Dolgow v. Anderson*, 43 F.R.D. 472, 490 (S.D.N.Y.1968). They have reasoned that since reliance is an issue in almost every Rule 10b–5 action, a contrary ruling would undermine any attempt to certify a class in such cases. *See, e. g., Green v. Wolf Corp., supra* at 301. These courts usually have accepted the possibility of separate trials on the reliance issue if the representative plaintiffs prevail at the trial on the common questions. *Id.; Feldman v. Lifton, supra.*

■ This Court cannot accept this cavalier approach to the reliance issue. The Court agrees with those courts that have recognized that separate trials on reliance would be unmanageable and would tax the court's resources to an intolerable extent. *Lorber v. Beebe*, 407 F.Supp. 279, 294 (S.D.N.Y.1975); *In re Memorex Securities Cases*, 61 F.R.D. 88, 98 (N.D.Calif.1973). As the court stated in *Memorex*, bifurcation of the proceeding into separate trials on the individual and common issues merely postpones resolution of the conflict between the reliance requirement in Rule 10b–5 actions and the predominance requirement of Rule 23(b)(3). *Id.* Therefore, the Court concludes that it cannot certify this class action unless individual proof of reliance is unnecessary in this case.

Plaintiff has advanced two theories in support of his position that individual members of the proposed class need not prove subjective reliance. The first theory relies on the Supreme Court's decision in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), in which the Court held that individual proof of reliance is not necessary in nondisclosure cases. Characterizing the allegations in the complaint as a nondisclosure claim, he asserts that individual reliance is not an issue in this case. The Court cannot accept this characterization of plaintiff's claim. This case involves primarily defendants' alleged failure to adequately provide for loan losses and the effect that this failure had on the price of CMI stock.

■ Plaintiff has alleged not that defendants failed to disclose loan loss reserves but rather that they misled investors by understating loan loss reserves. Such allegations involve affirmative misrepresentation rather than nondisclosure. *See Lorber v. Beebe*, 407 F.Supp. 279, 289 (S.D.N.Y. 1975); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 127 (S.D.N.Y.1974). The Court cannot accept plaintiff's twisted characterization of his claim. To do so would establish a precedent permitting conversion of any misrepresentation claim into a nondisclosure claim through the artifice of asserting that defendants failed to disclose either their misrepresentations or the material facts underlying their misrepresentations. *See Herzfeld v. Laventhol, Krekstein, Horwath & Horwath, supra* at 127.

■ Plaintiff, however, also argues that individual proof of reliance is unnecessary in cases such as this, because a presumption of reliance arises from a finding that publicly disseminated financial reports are materially misleading. This argument is supported by a recent series of cases that have extended the holding in *Affiliated Ute* to misrepresentation cases involving open market transactions. *See, e. g., Blackie v. Barrack, supra* at 906–908; *Chris-Craft Industries, Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 374 (2d Cir. 1973), *rev'd on other grounds*, 425 U.S. 910, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1977); *Tucker v. Arthur Anderson & Co.*, 67 F.R.D. 468, 479–481 (S.D. N.Y.1975); *In re Memorex Securities Cases, supra.* These cases do not abolish the reliance requirement, but rather adapt the type of reliance that must be proven to the particular circumstances of open market cases. *In re Memorex Securities Cases, supra* at 99. Unlike investors who purchase

stock in face-to-face transactions, investors who purchase in the open market may be harmed by misrepresentations even if they do not directly rely on them. *See* Note, *Reliance and Private 10b–5 Actions,* 88 Harv.L.Rev. 584, 593 (1975). If certain investors rely on the misrepresentations and thereby inflate the market price of the stock, other investors who rely merely on the integrity of the market are injured when they purchase the stock at the inflated price.[13] Thus, the "causal link" between the misrepresentations and the investor's injury is not his own subjective reliance on the misrepresentations, but rather the reliance of other investors on the misrepresentations, which thereby inflates the market price. *Blackie v. Barrack, supra* at 907. *See, In re Memorex Security Cases, supra* at 101. It would be impractical to compel plaintiff to prove actual reliance by a number of investors sufficient to inflate the market price of the stock. *Reliance and Private 10b–5 Actions, supra* at 593. Rather, if plaintiff establishes materiality by demonstrating that the misrepresentations would influence a reasonable investor, it is reasonable to presume that a number of investors relied on the misrepresentations and thereby inflated the market price. *Id.* This presumption is consistent with both the purpose of the securities' laws to promote confidence in the integrity of the securities market, *Blackie v. Barrack, supra* at 907, and the purpose of the reliance requirement to limit recovery to those cases in which the misrepresentations caused plaintiff's loss. *Id.* at 906; *In re Memorex Securities Cases, supra* at 100. Therefore, the Court joins those cases that have adopted an objective reliance standard and have permitted a presumption of reliance if plaintiff demonstrates that the misrepresentations were material. Since this ruling eliminates the necessity of individual proof

of reliance, individual questions of reliance cannot predominate over the common questions in this case.[14] Therefore, the Court holds that plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

### E. *Superiority*

Having determined that plaintiff has satisfied the other requirements for class action certification, the Court has little difficulty determining that a class action is the most efficient method of adjudicating this controversy. Indeed, the proposed class in this case exemplifies the type of class that warrants Rule 23 certification since it appears to include a large number of small claimants whose potential damages would not justify the legal expenses necessary to prosecute their claims separately. *See Mills v. Roanoke Industrial Loan & Thrift,* 70 F.R.D. 448, 455 (W.D.Va.1975); *Dolgow v. Anderson,* 43 F.R.D. 472, 484–485 (S.D.N.Y. 1968). Moreover, the large number of potential litigants renders alternatives such as joinder, intervention, test case and consolidation infeasible.

The criteria listed in Rule 23(b) also favor class action certification. The Court is unaware of any other pending suits by other members of the class. Furthermore, it does not appear that the members of the class have any special interest in individually controlling the litigation of their claims. Finally, it appears that concentration of litigation in this District is desirable since defendant, CMI, and its counsel are located in this District.

Defendants present two grounds for challenging the superiority of conducting this litigation as a class action. First, they assert that since no other members of the class have filed suit, class action certification will not avoid repetitious litigation. To accept this argument would emasculate

---

**13.** For example, the investors might rely on a favorable price trend or "price" earnings ratio. *Blackie v. Barrack, supra* at 907.

**14.** Of course, defendants will have the opportunity of rebutting this presumption by demonstrating either that so few investors relied on the misrepresentations that the market price

was not inflated or that plaintiff would have purchased the stock even had he known of the misrepresentation. *See Blackie v. Barrack, supra* at 906. This right of rebuttal, however, does not prevent common issues from predominating. *Id.* at 906 n. 22.

Rule 23 since it is designed particularly to assist small claimants who cannot afford to bring separate suits. Thus, the failure of other class members to file suit favors certification since it indicates that they cannot afford to bring suit. Defendants also assert that this case will not be manageable as a class action because of the individual questions involved. The Court already has addressed this problem in determining the predominance question and relies on that discussion in rejecting this argument. For these reasons, the Court concludes that a class action is a superior method for adjudicating this controversy and will certify the proposed class.

## IV. *Memorandum of defendant, Coopers & Lybrand, in opposition to class action certification*

Defendant, Coopers & Lybrand, has filed a separate memorandum challenging the appropriateness of class action certification. Specifically, it argues that plaintiff is attempting to represent a "fail-safe" class, that plaintiff has failed to allege that it acted with the fraudulent intent necessary to state a claim under *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and that plaintiff did not rely on the 1973 annual report which was the only document involved in this case that defendant certified.

■ Although the Court agrees that the class, as described in the complaint,[15] is an impermissible "fail-safe" class, it concludes that this description of the class does not preclude class action certification. As plaintiff notes in his response, the notice of motion for class action determination and other subsequent pleadings describe the class in a permissible manner. The notice describes the class as "the public owners and/or holders of Capital Mortgage Investments ("C.M.I."), who purchased its shares during the period January 10, 1974 to November 11, 1974, at inflated prices caused by or resulting from defendants' false, mis-

leading and deceptive statements or material omissions contained in C.M.I.'s financial statements and reports publicly disseminated by the defendants, and who were damaged thereby . . . ." As the Court stated in the beginning of this opinion, it is the appropriateness of this class that has been determined in this opinion.

■ Defendants' argument concerning plaintiff's failure to state a claim for fraud is equally unmeritorious. A motion for class action certification is not an appropriate vehicle for determining whether plaintiff has stated a claim. *Brandt v. Owens-Illinois, Inc.*, 62 F.R.D. 160 (S.D.N.Y.1973). The Court believes that the allegations of fraudulent activity by Coopers & Lybrand in paragraphs 12, 13, 14, 15, 16, 20, 21 and 23 of the complaint provide sufficient detail for determining this motion.

■ Finally, the Court holds that consideration of defendant's contention that plaintiff cannot demonstrate the reliance required to prove his claim is totally inappropriate in a motion for class action determination. This contention involves an inquiry into the merits of plaintiff's claim. The courts have repeatedly held that Rule 23 does not permit such an inquiry. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *B & B Investment Club v. Kleinert's Inc.*, 62 F.R.D. 140, 144 (E.D.Pa.1974); *Coniglio v. Highwood Services, Inc.*, 60 F.R.D. 359, 361 (W.D.N.Y.1972).

Accordingly, IT IS, this 6th day of September, 1977, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's motion for class action certification BE, and the same hereby IS, GRANTED.

2. That plaintiff BE, and hereby IS, CONDITIONALLY CERTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure as class representative in this

---

15. The complaint describes the class as "stockholders of C.M.I. who were wrongfully induced to purchase their shares in the period complained of, as a result of defendants' wrongful acts and material omissions."

action for the class of persons who during the period from January 10, 1974 to November 11, 1974 were induced to purchase shares of Capital Mortgage Investment stock by the false, misleading and deceptive statements or material omissions contained in C.M.I.'s financial statements and reports publicly disseminated by defendants, and who were damaged thereby.

3. That plaintiff bear the burden, including the cost, of notifying the members of the class.

4. That plaintiff submit a proposal to the Court within thirty (30) days from the date of this opinion outlining the procedure for conducting discovery to determine the identity and address of each member of the class, the time frame for conducting that discovery, the procedure for providing notice in conformance with Rule 23(c)(2) and the contents of that notice.

5. That any further communications (other than those permitted in the notice) from the named parties, their representative or counsel to the potential class members is forbidden without the prior approval of this Court.

### ON MOTION FOR PROTECTIVE ORDER

Defendant Coopers & Lybrand has moved for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure. Defendant seeks to prohibit discovery sought by plaintiff in a Notice to Produce Documents filed on October 14, 1977. The four grounds for defendant's motion are:

(1) The requested discovery is overly broad and oppressive.

(2) The requested discovery includes material which constitute trade secrets.

(3) The requested discovery contravenes Maryland's Accountant-Client privilege, as set forth in Md.Cts. & Jud. Proc.Code Ann. § 9–110 (1974).

(4) The requested discovery is untimely since other defendants have moved to narrow the class action.

Plaintiff has opposed this motion and has filed a memorandum in opposition. Both sides agree that the fourth ground for defendant's motion is now moot, and accordingly, the Court will rule only as to the remaining three grounds.

### I. The "Overly Broad" Challenge

Defendant has challenged the requested discovery on the ground that it is "overly broad and oppressive." No affidavits in support of this motion have been filed, and as plaintiff noted in his memorandum in opposition, no facts in support of this position have been advanced. Defendant relies mainly upon its characterization of plaintiff's complaint as being primarily concerned with defendant Capital Mortgage Investment's accounting and business treatment of problem loans. Therefore, this defendant concludes that plaintiff is not entitled to discovery of any additional documents which do not relate to the problem loans. The Court declines to adopt such a narrow approach to discovery.

Defendant has conceded that "the policy of the Federal Rules of Civil Procedure is to allow broad discovery." Moreover, it is patent the defendant has not shown the "good cause" required by Rule 26(c) for the issuance of a protective order. For these reasons, and the reasons cited by plaintiff, the Court will deny this portion of the motion.

### II. Trade Secrets

Coopers & Lybrand has objected to any discovery which requires them to divulge their "internally utilized staff manuals," and similar documents. Defendant argues that such materials are valid trade secrets and hence not discoverable.

Rule 26(c)(7) states that a party may seek a protective order, for good cause shown, "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way."

Both sides apparently agree that a restrictive order, as to all documents which

contain secret or confidential material, should appropriately protect defendant. This Court will deny this portion of the motion, subject to the submission of an order acceptable to both parties, restricting the use of confidential documents to this litigation only, and providing other appropriate safeguards.

### III. *The Maryland Accountant-Client Privilege*

Md.Cts. & Jud.Proc.Code Ann. § 9–110(a) provides in pertinent part:

A certified public accountant . . . may not disclose the contents of any communication made to him by a person employing him to examine, audit, or report on any book, record, account, or statement nor may he disclose any information derived from the person or material in rendering professional service unless the person employing him or his personal representative or his successor in interest permits it expressly.

Defendant argues that this statute prohibits it from disclosing "any documents relating to any examination of CMI since CMI has not authorized such disclosure." Plaintiff counters with three theories which allegedly negate the privilege:

(1) Maryland would not apply the privilege where a conspiracy between accountant and client to defraud third parties is alleged.

(2) Since the suit was initiated in New York, and transferred for venue purposes, New York law, (which does not recognize this privilege), should apply.

(3) The state law should not apply since this is a federal question case.

■■■ The Court does not believe that the first or second arguments advanced by plaintiff are sufficient to avoid applying the privilege. In the first instance, the Court has not been cited to any Maryland case construing the State privilege. A search for any such cases by the Court has also proven fruitless. The Court declines to base its ruling on its construction of an uninterpreted state law. This holding comports with principles of comity. Where a dispositive ruling can be made based upon settled federal law, a federal court should be slow to implant its construction upon a heretofore uninterpreted state law.

■■■ Plaintiff's argument that New York law should apply is also unpersuasive. Although it is generally true that a change of venue under 28 U.S.C. § 1404(a) does not change any applicable substantive state law, *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), where as here, the forum state has articulated a strong public policy, conflicts law principles dictate that the court apply the forum state's law. *Hare v. Family Publications Service, Inc.*, 334 F.Supp. 953 (D.Md.1971). In *Hare*, Judge Miller held that in diversity cases a federal court should apply the law of privileged communications which would be applied by the courts of the state in which it sits. Finding that Maryland had enunciated a strong public policy in favor of the protection of accountant-client confidences, Judge Miller held that he would apply Maryland law even though the communications took place in New York. This Court will follow Judge Miller's reasoning, and holds that if any state privilege law is applicable to the instant case, it will be Maryland, rather than New York, law.

The final question thus becomes whether state privilege law is applicable in a federal question case. Questions of privilege in federal cases are controlled by Rule 501 of the Federal Rules of Evidence, which reads as follows:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State

law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

The conflict in this case is clear. In contrast to the Maryland statute, there is no accountant-client privilege at common law. *See Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Thus, if federal common law applies, no privilege may be asserted by Coopers & Lybrand and its motion for a protective order must be denied.

Anyone familiar with the Federal Rules of Evidence is aware that Title V of those rules created more controversy than any other portion of the proposed rules. As finally enacted by Congress, Rule 501 attempted to preserve the status quo by permitting the United States Courts to apply privileges consistent with the mandate of *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. *See* J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 501[02] at 501–18. Contrary to defendant's position, Congress expected the federal courts to apply federal law in federal question cases. This was explained in the bill's Conference Report:

> In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law. [Conference Report No. 93–1597, 1974 U.S.Code Congressional and Administrative News, 93d Cong., 2d Sess., p. 7098 at p. 7101].

In this 10b–5 case, the applicability of the Maryland statute under the existing circumstances is unwarranted. This ruling comports with the case law prior to the enactment of the Federal Rules of Evidence. *See Heathman v. United States District Court*, 503 F.2d 1032 (9th Cir. 1974); *Patterson v. Norfolk and Western Railway Co.*, 489 F.2d 303 (6th Cir. 1973); *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *J. P. Foley & Co. v. Vanderbilt*, 65 F.R.D. 523, 526 n. 1 (S.D.N.Y.1974); *Boyd v. Gullett*, 64 F.R.D. 169 (D.Md.1974).

Finally, defendant Coopers & Lybrand argues that since this case has a pendent state claim, state law should apply to the whole case since state law supplies the rule of decision as to an element of the claim. The Court declines to adopt such a ruling. The Court believes that such a finding would amount to a case of "the tail wagging the dog." In this class action, only the representative plaintiff has been allowed to bring a pendent state claim. To prohibit the entire class from discovery of this information because of a state privilege applicable to only one plaintiff is not warranted. The Court believes the instant case falls within the rule announced in *Patterson v. Norfolk and Western Railway Co., supra*, that "[i]n any given instance a special federal interest in seeking the truth in a federal question case may require the admissibility of evidence despite the existence of a state rule holding such evidence to be privileged." 489 F.2d at 307.

In light of the aforegoing, IT IS, this 14th day of March, 1978, ORDERED as follows:

1. That the Motion of defendant Coopers & Lybrand for a protective order, filed herein on November 7, 1977, BE and the same hereby IS, DENIED except as to those confidential documents requested by plaintiff which defendant asserts may be classified as "trade secrets" in accordance with the provisions of Rule 26(c)(7) of the Federal Rules of Civil Procedure.

2. That the Court hereby orders counsel for plaintiff and defendant to submit an agreed Order which restricts the use of the confidential documents solely to this litigation, and provides such other safeguards as counsel for the parties deem appropriate.