The REPORTERS COMMITTEE FOR FREEDOM OF the PRESS et al., Plaintiffs,

v.

Cyrus R. VANCE et al., Defendants.

MILITARY AUDIT PROJECT et al., Plaintiffs,

v.

DEPARTMENT OF STATE et al., Defendants.

Civ. A. Nos. 77–220, 77–391.

United States District Court, District of Columbia.

Dec. 8, 1977.

Charles A. Horsky, Peter Barton Hutt, Robert M. Sussman, Covington & Burling, Washington, D.C., William A. Dobrovir, Andra N. Oakes, Davis L. Scull, Washington, D.C., for plaintiffs.

Jeffrey Axelrad, Dept. of Justice, Washington, D.C., David Ginsberg, James E. Wesner, Martha Jane Shay, Ginsburg, Feldman & Bress, Washington, D.C., for defendants.

### . OPINION

JOHN LEWIS SMITH, Jr., District Judge.

In these two Freedom of Information Act cases, the Reporters Committee for Freedom of the Press, the American Historical Association, the American Political Science Association, and nine authors and journalists, along with the Military Audit Project, seek access to records, now in the custody of the Library of Congress, of Dr. Henry Kissinger's official telephone conversations during his service as Assistant to the President for National Security Affairs and as Secretary of State. Defendants are the Department of State, Dr. Kissinger, his successor, Cyrus Vance, Librarian of Congress Daniel Boorstin, and Archivist James Rhoads. Motions for Summary Judgment have been filed and argued on behalf of Dr. Kissinger and all plaintiffs.[1]

Dr. Kissinger served as National Security Adviser from January 20, 1968 until his resignation on November 3, 1975. He assumed office as Secretary of State on September 22, 1973 and remained in that position until the end of the Ford Administration in January, 1977. Thus, for a period of nearly two years, he served in two capacities—as Secretary of State and as staff adviser to the President.

Throughout Dr. Kissinger's tenure in the Nixon and Ford Administrations, his secretaries, both at the White House and at the State Department, monitored his telephone conversations and took shorthand notes of what was said. Transcriptions of these notes were prepared for Dr. Kissinger and his staff.[2] No distinction was drawn between conversations relating primarily to official government business and those of a more personal nature. All were monitored, transcribed, and the records thereof stored in Dr. Kissinger's office, apart from official agency files.

Prior to leaving office, Dr. Kissinger decided to donate to the United States his personal papers and copies of various official documents relating to his activities while in office. In early 1976 the State Department's Legal Adviser informed Dr. Kissinger that the secretarial notes were not State Department documents but were his own personal papers. This advice was affirmed in writing in a memorandum dated November 11, 1976.

On October 29, 1976, Dr. Kissinger transferred the notes from his State Department office to a vault at the estate of Vice President Nelson Rockefeller in Pocantico Hills, New York. Dr. Kissinger requested Deputy Undersecretary Lawrence Eagleburger to review all the telephone records, including those compiled during his service at the

---

1. At argument, the government reported that, while it did not join Dr. Kissinger's motion, it did not oppose it.

2. In the Secretary's own words: "[m]y purpose in causing the notes to be made was to create a rough record of those of my daily telephone conversations to which I or my immediate staff might wish to refer in order to follow up on matters discussed orally." SECOND AFFIDAVIT OF HENRY KISSINGER ¶ 3. In his supporting papers, Dr. Kissinger reports that only his staff reviewed the notes. He never read them, but kept them as a diary.

White House, and to prepare written extracts of "any significant policy decisions or actions not otherwise reflected in the Department's records".[3] These extracts are now filed at the State Department.[4]

Finally, on December 24, 1976, the notes were deeded to the United States, in the custody of the Library of Congress. Under the terms of the deed, public access to the papers was restricted to Dr. Kissinger and his appointees for twenty-five years or until five years after his death, whichever is later. Thereafter the notes would be available for public inspection with the consent or upon the death of the other party to the conversation. On December 28, 1976, the records were delivered from Pocantico Hills to the Librarian of Congress. Subsequently, defendant Rhoads, citing his responsibility as Archivist of the United States to oversee the preservation of "records of a permanent historical value," requested permission to inspect the notes. By letter dated January 18, 1977, Dr. Kissinger rejected that request.

The Freedom of Information Act grants this Court authority to "enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). Dr. Kissinger contends that the Act is inapplicable for three reasons. First, he asserts, the fact that the notes are in the custody of the Library of Congress, which is not subject to the Act,[5] renders meaningless any court order prohibiting the State Department from withholding documents. He argues that FOIA imposes no obligation upon an agency to gather records no longer in its possession [6] and that, in any event, plaintiffs lack standing under the Federal Records Act to challenge the transfer from the Department.[7]

The Federal Records Act provides the exclusive procedure for disposal of government records, which are defined to include:

> "documentary materials . . . made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or *appropriate for preservation as evidence of* the organization, functions, *policies, decisions*, procedures, operations, or other activities *of the Government* or because of the informational value of data in them." 44 U.S.C. § 3301 (emphasis added).

Prior to disposal of its records, an agency must submit to the Administrator of General Services a list of those intended for disposal. 44 U.S.C. § 3302. Only if the Administrator then determines that the records are no longer appropriate for preservation may they be destroyed. 44 U.S.C. § 3303a. When, as here, records have been removed from an agency outside this statutory framework, the agency head must so notify the Administrator and, together with him, initiate action through the Attorney General for their recovery. 44 U.S.C. § 3106. This, suggests Dr. Kissinger, is plaintiffs' sole remedy.

There is, however, an alternative. Rather than wait for institution of the statutory retrieval action, plaintiffs may first invoke the broad equitable powers granted

---

3. Compare AFFIDAVIT OF MONROE LEIGH ¶ 15 with SECOND AFFIDAVIT OF HENRY KISSINGER ¶ 13.

4. Plaintiffs are aware of the existence of these extracts but have not sought access to them under the Freedom of Information Act.

5. Compare 5 U.S.C. § 552(e) with 2 U.S.C. § 132. While the Library of Congress receives executive agency treatment for some purposes, see e. g., 5 U.S.C. § 5596, plaintiffs have conceded that it is not subject to requests for information under FOIA. See 5 U.S.C. § 551(1)(A).

6. See Nichols v. United States, 325 F.Supp. 130 (D.Kan. 1971), aff'd, 460 F.2d 671 (10th Cir.), cert. denied, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972); Ciba-Geigy Corporation v. Matthews, 428 F.Supp. 523 (S.D.N.Y. 1977). See also, ATTORNEY GENERAL'S MEMORANDUM ON THE PUBLIC INFORMATION SECTION OF THE ADMINISTRATIVE PROCEDURE ACT 23–24 (1967).

7. See Nichols v. United States, 460 F.2d 671, 674–75 (10th Cir.), cert. denied, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972). See generally, Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 280, 45 L.Ed.2d 26 (1975).

the district courts in aid of their role as the "enforcement arm" of the Freedom of Information Act. *See Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 19, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). *Accord, Nixon v. Sampson*, 389 F.Supp. 107, 121–22 n.34 (D.D.C.), *stayed sub nom. Nixon v. Richey*, 168 U.S.App.D.C. 172, 513 F.2d 430 (1975), *dismissed as moot*, (D.D.C. September 21, 1977). The courts may draw on those powers to order the return of wrongfully removed agency documents where a statutory retrieval action appears unlikely.

■ Secondly, Dr. Kissinger urges that notes of those conversations conducted in his White House capacity cannot be considered "agency records". At oral argument, plaintiffs withdrew their challenge to this position.

Dr. Kissinger's final argument, based on the proposition that creation of the extracts fully satisfied the State Department's record-keeping requirements, is that the notes are personal working papers,[8] not "agency records" and not subject to an FOIA request. He maintains that he considered and treated the notes as personal property from their inception.[9] Circulation was restricted to his immediate staff. The records were stored in filing cabinets in his office.[10] Dr. Kissinger asserts that had he thought that the notes would be determined to be official records, he would have edited them for errors in transcription. Since that would have been a long and arduous process, he would have abandoned the entire project.

State Department regulations require documentation of all official activities in order to "facilitate the making of decisions and policies and the taking of actions" by Department employees and "to provide materials for research and historical purposes." 5 Foreign Affairs Manual [FAM] § 423.1. *See* 41 C.F.R. § 101–11.202–2(a). This requirement extends to all "decisions, commitments, and discussions of any significance which are oral in nature." 5 FAM § 423.2–1. *See* 41 C.F.R. § 101–11.202–2(b). Involved here are high-level conversations of the Secretary of State. The significance of the commitments, decisions, and discussions embodied in these conversations is apparent from the stature of the other parties to them (two presidents, heads of state, cabinet officers, diplomats, legislators, scholars, journalists, and others) and is underscored by a Department policy which prohibits monitoring of telephone conversations except when "absolutely essential to the conduct of business."[11] Consequently, under his own regulations, Dr. Kissinger had no alternative but to document the matters discussed in the conversations.

■ It is a basic rule of copyright law that work created by an employee within the scope of employment is the property of the employer. *See, e. g., Scherr v. Universal Match Corp.*, 417 F.2d 497, 500 (2d Cir. 1969), *cert. denied*, 397 U.S. 936, 90 S.Ct. 945, 25 L.Ed.2d 116 (1970); *Brattleboro Publishing Co. v. Winmill Publishing Corp.*, 369 F.2d 565, 567–68 (2d Cir. 1966). This principle applies equally in the government sphere.

In *First Trust Company of St. Paul v. Minnesota Historical Society*, a federal trial court rejected a government claim to journals compiled by Lieutenant William Clark

---

**8.** *See* 5 Foreign Affairs Manual [FAM] § 432.2–8.

**9.** *See* 5 FAM § 432, which reads: "Papers of a personal character which pertain only to an individual's private affairs and which are kept in the office of a Departmental or post employee are to be clearly designated as personal. They are to be filed separately from the official records of the office at all times. When official policy matters are discussed in personal correspondence, that portion pertaining to functions or activities of the Department or a post is to be extracted and made a part of the official records." By its terms, the regulation applies exclusively to "[p]apers . . . which pertain only to an individual's private affairs" and to "personal correspondence".

**10.** *Id.*

**11.** The policy is set forth in an undated letter from the Department's Acting Assistant Secretary for Congressional Relations to former Congresswoman Bella Abzug. *But see* 41 C.F.R. § 101–35.308–9(f).

during his exploration of the Missouri River with Captain Meriwether Lewis. 146 F.Supp. 652 (D.Minn. 1956). The court noted that Captain Lewis, not Lieutenant Clark, had been charged by President Jefferson with the responsibility of creating a log of the expedition. On appeal, the Eighth Circuit framed the issue as follows:

"If Clark's notes are the written records of a government officer *executed in the discharge of his official duties*, they are public documents and ownership is in the United States." *United States v. First Trust Company of St. Paul*, 251 F.2d 686, 690 (8 Cir. 1958) (emphasis added).

On the basis that the diary contained "a great many personal and private notations . . . or letters, details of personal illnesses, social engagements, and other such items as might not be expected to be found in notes of official character or in an official record," the Court concluded that the notes could not be classified as government property. *Id.*

Similarly, in *Public Affairs Associates, Inc. v. Rickover*, this Court held that Admiral Hyman Rickover, not the federal government, was the owner of two speeches authored and delivered by the Admiral. 268 F.Supp. 444 (D.D.C.1967). Determinative factors in that case were that the speeches had been prepared by Admiral Rickover while not on duty and during his leisure time at home. Both speeches contained his personal views on subjects unrelated to his official responsibilities and were delivered at private functions before private audiences.

Although personal in some respects, Dr. Kissinger's secretarial notes were compiled under circumstances unlike those surrounding the creation of either Lieutenant Clark's journals or Admiral Rickover's speeches. The records in dispute here were produced not only in accordance with Department regulations but also on government time and with the aid of department employees, equipment, materials, and other public resources. Having been prepared and transcribed "in the discharge of his official duties", the notes are property of the United States.[12] The Court further finds that the records were wrongfully removed and should be returned to the State Department.

Plaintiffs' Motions for Summary Judgment will be granted, and defendant Kissinger's Motion for Summary Judgment will be denied. Counsel will submit an appropriate order within ten days.

---

12. Dr. Kissinger suggests that the creation of the extracts transformed the original notes from federal records into personal property. Department regulations do not envision such a metamorphosis. Section 432 of the regulations requires extraction of official matter contained in "personal correspondence". *See* note 9, *supra*. It does not permit agency employees to extract personal matter from official correspondence and to then treat the correspondence as personal.