Donald E. BRINK

v.

Leo DaLESIO et al.

Civ. No. Y–78–161.

United States District Court, D. Maryland.

May 21, 1979.

Harold Buchman, Baltimore, Md., Arthur L. Fox, II, and Paul Alan Levy, Washington, D. C., for plaintiff.

Plato Cacheris and Larry S. Gondelman, Washington, D. C., for defendant Leo DaLesio; H. Russell Smouse, Baltimore, Md., co-counsel.

Anthony A. Abato, Jr., Towson, Md., for defendants Teamsters Allied Pension Fund of Md., Teamsters Local 311 Health & Welfare Fund of Md., Teamsters Local 311 Pension Fund of Md., and Affiliated Teamsters Health & Welfare Fund of Md.

Walter E. Dillon, Washington, D. C., for defendants, Alfred Bell, Alfred Bell, Inc., and Fund Administration, Inc.

William A. Snyder, Jr., Baltimore, Md., for defendant Md. Nat. Bank.

Bernard W. Rubenstein, Baltimore, Md., for Local 311, Petroleum, Const., Tankline Drivers and Allied Employees IBT.

Barry S. Frame and Luther C. West, Baltimore, Md., for Teamsters Joint Council 62.

JOSEPH H. YOUNG, District Judge.

The plaintiff, Donald E. Brink, a member of the International Brotherhood of Teamsters Local 311 and Joint Council 62, has initiated this action against Leo DaLesio and Alfred Bell, an officer of the locals, charging numerous violations of fiduciary obligations allegedly owed to the union and its members. Local 311 and Joint Council are also named as defendants. Plaintiff Brink has brought this action under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 501(b), and the Employee Retirement Income Security Act, 29 U.S.C. § 1132. The complaint was filed on January 30, 1978.

On April 5, 1978, this Court denied defendants' motions to dismiss. *Brink v. DaLesio*, 453 F.Supp. 272 (D.Md.1978). The Court held a hearing on February 9, 1979, to resolve the barrage of discovery motions the parties have inflicted upon the Court. This Memorandum and Order will address individually each of the remaining open discovery motions presented during the February hearing.

## I. LEO DALESIO'S MOTION TO DISMISS OR LIMIT EVIDENCE (PLEADINGS 155, 162)[1]

Defendant Leo DaLesio has moved to dismiss the entire case, or, in the alternative, to limit the introduction of evidence as a result of the U.S. Attorney's office having made available to plaintiff certain documents subpoenaed by the grand jury. Defendant claims this procedure constitutes a violation of Rule 6(e) of the Federal Rules of Criminal Procedure which requires that grand jury proceedings and matters be disclosed to third parties only when directed to do so by the Court or in connection with a judicial proceeding.

This issue was first raised at the November 20, 1978 Pretrial Conference and at the time provoked considerable concern. Counsel for plaintiff Brink have responded to this motion with both factual and legal arguments, and assuming that plaintiff's version of the facts is correct, there are no grounds on which the evidence should be limited or the case dismissed.

Plaintiff's version of the story is as follows. In an effort to obtain business records belonging to Local 311, the Union for which DaLesio was secretary-treasurer, plaintiff's counsel sought discovery under F.R.Civ.P. 34. The discovery related to minutes of Executive Board and membership meetings, ledgers, phone statements, American Express billings, and other materials. Production was complicated because

---

1. References to pleadings are to the numbers occurring in the official Court file in this case.

Local 311 had turned over these materials to the grand jury which was investigating DaLesio and his dealings. The Request for Production was sent to Local 311 on May 23, 1978, and as of July 18, 1978, Local 311 had *not* recovered its documents. According to plaintiff's Memorandum (pleading 162, at 3), at the July 18 scheduling conference, plaintiff's counsel raised this problem with Local 311's counsel who, in turn, informed the Court that they had approached Assistant U.S. Attorney Rohrbaugh to establish a means for inspecting the documents. DaLesio's counsel, present at that time, raised no objection.

Plaintiff's counsel were then referred by Local 311's counsel to Arnold Weiner, special counsel originally retained by DaLesio on behalf of Local 311 in connection with the grand jury proceedings. Mr. Fox, on August 18, 1978, wrote to Mr. Weiner asking his assistance in obtaining the Local 311 documents. Weiner replied on August 31, 1978 indicating that he had "no objection to your examination of any records which are in [Rohrbaugh's] possession, custody or control." Rohrbaugh wrote Fox on September 13, 1978 setting forth the limited scope of review which plaintiff would be accorded in connection with the Local 311 documents:

> I am in receipt of correspondence from Arnold M. Weiner, Esquire, who represents Teamsters Local 311. Mr. Weiner has indicated that, on behalf of his client, he has no objection to your inspection of the records which had been subpoenaed by the Grand Jury. In order to expedite your request, I suggest that, in lieu of my returning all of the documents to Mr. Weiner so that he can forward them to you, you make arrangements to inspect the documents at my office. After your inspection of these documents, we will make any copies which you desire.
>
> However, in order to maintain the integrity of the Grand Jury investigation, under no circumstances will you be afforded the opportunity to review any additional evidence the Grand Jury has subpoenaed. Further, any summaries or computations which the Government has made concerning the union's records cannot be supplied to you. The only documents which you will be permitted to review will be the records of the union as they were forwarded to the Grand Jury by Mr. Weiner.

For copies of these letters, see Appendices A, B, and C to Pleading 162. Consequently, given these facts, all of which are born out in the Fox-Weiner-Rohrbaugh correspondence, it would appear that the spectre of a violation of grand jury secrecy raised last November was yet another smokescreen futilely raised by DaLesio.

Interestingly enough, defendant has argued the law well but has failed to provide any facts at variance with plaintiff's account of the episode. The only possibly troublesome claim raised by DaLesio is that plaintiff reviewed documents of Local 311 as well as documents which were personal to Leo DaLesio; however, as of this date, those documents which are allegedly "personal" have not been identified. One item, DaLesio's desk calendar, has been mentioned, yet plaintiff claims that the calendar was maintained in the course of DaLesio's duties as secretary-treasurer of Local 311 and is consequently Union property which can legitimately be produced. Plaintiff also notes that DaLesio does *not* maintain that *he* produced the calendar pursuant to any subpoena other than the one served on Local 311.

In making this claim as to the desk calendar, plaintiff relies on *Reporters Committee for Freedom of the Press v. Vance,* 442 F.Supp. 383 (D.D.C.1977), which recognized the principle of copyright law that "work created by an employee within the scope of employment is the property of the employer," applies in a government sphere. 442 F.Supp. at 386. Here the issue involved the character of Secretary Kissinger's records, and the court concluded that they belonged to the State Department:

> *Although personal in some respects,* Dr. Kissinger's secretarial notes were compiled under circumstances unlike those surrounding the creation of either Lieutenant Clark's journals or Admiral Rick-

over's speeches. The records in dispute here were produced not only in accordance with Department regulations but also on government time and with the aid of department employees, equipment, materials, and other public resources. Having been prepared and transcribed "in the discharge of his official duties", the notes are property of the United States.[12] The

[12] Dr. Kissinger suggests that the creation of the extracts transformed the original notes from federal records into personal property. Department regulations do not envision such a metamorphosis. Section 432 of the regulations requires extraction of official matter contained in "personal correspondence". *See* note 9, *supra.* It does not permit agency employees to extract personal matter from official correspondence and to then treat the correspondence as personal.

Court further finds that the records were wrongfully removed and should be returned to the State Department.

442 F.Supp. at 387 (Emphasis added). While DaLesio's calendar undoubtedly included references to "personal" events and engagements, no evidence has been presented to show that it is sufficiently unrelated to his union activities so as to constitute a personal rather than business record. After all, Local 311 handed the calendar over, and DaLesio did not object at that time.

With regard to DaLesio's claim that the documents listed by plaintiff in its proposed Pretrial Order "all . . . were apparently obtained by Plaintiffs' counsel in their review of subpoenaed documents in the United States Attorney's Office," plaintiff has responded claiming that this is simply untrue:

Mr. DaLesio's counsel was even advised by plaintiffs' counsel that a number of the documents were obtained from defendant Bell and the Maryland National Bank. A substantial number were obtained directly from Local 311 and others were drawn from public documents and other sources, which a cursory examination of the documents would readily reflect. Plaintiffs make no effort here to identify the source of each of the hundreds of documents, a time-consuming

process they would rather not perform, unless the Court should so instruct.

Pleading 162, at 5 n.3.

In light of these facts, defendant DaLesio can only prevail by showing somehow (1) that the materials released by Local 311 were personal, not business records and should not have been released, and (2) that plaintiff still had to comply with Rule 6(e) and obtain a court order to gain access to the subpoenaed material.

 In response, plaintiff argues that Rule 6(e) applies only to efforts to examine matters "occurring before the grand jury" and not to independent efforts to examine documents in the grand jury's custody. The purpose behind Rule 6(e) is to require a showing of particularized need before matters before the grand jury can be disclosed to parties not connected with its investigation. Yet, plaintiff advances a forceful distinction in noting that documents subpoenaed by a grand jury are not automatically transformed into matters "occurring before the grand jury." Unlike the testimony elicited at the grand jury proceeding, the documents exist independently. Plaintiff is not seeking any "fruits" of the grand jury investigation such as a transcript, minutes, or a prosecutor's memorandum summarizing the proceedings, but rather seeks documents otherwise discoverable under F.R. Civ.P. 34. Plaintiff's position is aptly supported by Chief Judge Lumbard's observations in *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir. 1960):

Rule 6(e) embodies a long established policy of the federal courts to maintain the secrecy of grand jury proceedings. See *United States v. Procter & Gamble Co.*, 1958, 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077. Though the reasons for the policy are many, see *United States v. Rose*, 3 Cir., 1954, 215 F.2d 617, 628–29, the Rule is intended only to protect against disclosure of what is said or what takes place in the grand jury room. Documents as well as oral testimony of course may come within its proscription against disclosure. See, *e.g., In re April 1956 Term Grand Jury*, 7 Cir., 1956, 239

F.2d 263. However, it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury. Thus, when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. *In the Matter of Hearings Before the Committee on Banking and Currency of the United States Senate*, D.C.N.D.Ill., 1956, 19 F.R.D. 410; *State v. Kemp*, 1928, 124 Conn. 639, 1 A.2d 761.

*See also State of Illinois v. Sarbaugh*, 552 F.2d 768, 772, n.2 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977) (suggesting that policy of grand jury secrecy has more limited application to subpoenaed documents than to grand jury transcripts); *In re Grand Jury Investigation of Ven-Fuel*, 441 F.Supp. 1299, 1302–03 (M.D. Fla.1977) ("Rule 6(e) . . . was not intended to insulate from disclosure all information once it is presented to a grand jury. *United States v. Saks and Co.*, 426 F.Supp. 812, 814 (S.D.N.Y.1976).")

Plaintiff has not sought to discover all documents subpoenaed by the grand jury. The scope of the Rule 34 discovery sought is limited to material contained in the production request and is *not* an attempt to invade the secrecy of the grand jury. DaLesio has simply sought to block discovery by creating this red herring defense concerning Rule 6(e). This limited nature of the discovery sought is corroborated by Assistant U.S. Attorney Rohrbaugh's letter to plaintiff's counsel, indicating that the information provided will be limited to the material provided by Local 311 and not "any additional evidence that the Grand Jury has subpoenaed." Consequently, the motion to dismiss or limit introduction of evidence must be denied.

## II. PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FURNISHED TO THE GRAND JURY (PLEADINGS 161, 185).

Plaintiff, pursuant to F.R.Civ.P. 37, moves the Court to direct defendants Alfred Bell and Leo DaLesio, and deponent Ralph DaLesio, to produce any documents withheld due to the fact that they are temporarily in the grand jury's custody. Plaintiff has already moved to compel an *in camera* production of documents withheld pursuant to an alleged Fifth Amendment privilege and now seeks (1) an order directing defendants to produce retained copies of documents furnished the grand jury, (2) to secure the return of the documents for plaintiff's inspection, or (3) to consent to plaintiff's examination of the originals in the grand jury's custody. Also, plaintiff requests an order directing defendants to produce all requested documents submitted to the grand jury inasmuch as any applicable Fifth Amendment privilege has been waived.

This motion raises issues similar to those discussed in *Interstate Dress Carriers, supra*, which received further attention in *Davis v. Romney*, 55 F.R.D. 337, 341 (E.D.Pa. 1972), where the court said:

The plaintiffs do not seek to know what use the grand jury made or is making of the binders now before it. They do not wish to know upon whom the grand jury is focusing its attention and for what crimes. They only seek information from binders which now happen to be before the grand jury. In fact, when plaintiffs first asked for the information and when they first became legally entitled to it pursuant to Rule 33(a) Fed.R.Civ.P., these binders were not before the grand jury at all.

The file binders exist as an entity apart from the grand jury; the information contained therein does not reflect upon and is not inextricably intertwined with the deliberation or work of the grand jury. Because of this, disclosure of the information can be accomplished without suggesting some specific act, thought, or

focus of the grand jury. No one will know what happened when this material was examined by the grand jury and what was culled from it, if anything. To say as the defendants do, that the grand jury has a Midas like quality in that everything it touches becomes a secret does not comport with the language of the Rule 6(e) which contemplates keeping secret only "matters occurring before the grand jury." Since disclosure will not expose or reveal what "occurr[ed]" when the grand jury examined this material we see no reason for the application of Rule 6(e) to the situation at bar.

The situation at bar is akin to *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2nd Cir. 1960) . . . .

■ Plaintiff does not merely seek documents supplied to the grand jury but requests documents or copies "that are described by any of plaintiffs' discovery requests *and* that have been furnished to a grand jury, voluntarily or pursuant to subpoena." Thus, it cannot be said that plaintiff's request is intended primarily to find out what has transpired at the grand jury proceedings. Plaintiff's action is intended to counter defendants' claim that they cannot produce the materials because they are in the grand jury's custody. The cases cited by plaintiff[2] show that where a party has voluntarily or otherwise submitted materials to the government, so long as it has the right to secure copies, it must do so and provide them to the party seeking discovery. In other words, mere custody of the documents with the grand jury cannot be a shield to bar legitimate civil discovery.

Plaintiff argues that since the requested documents have been turned over to the grand jury, then it must follow that defendants have waived any Fifth Amendment claims they might have and should now make them available to plaintiff. *See, e. g.,*

*Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951) ("where criminating facts have been voluntarily revealed, the privilege cannot be invoked to avoid disclosure of the details"); *Ellis v. United States,* 135 U.S.App.D.C. 35, 416 F.2d 791 (1969) (witness testifying voluntarily before grand jury not invoking privilege against self-incrimination, of which he has been advised, waives the privilege). But this argument extends the waiver theory far beyond what the commentators and the cases suggest. Two other aspects of plaintiff's request present difficulties. First, the request is very broadly worded, *e. g.*, the motion seeks to compel document production of materials "that are described by *any of* plaintiffs' discovery requests and that have been furnished to a grand jury, voluntarily or pursuant to subpoena." This request could be interpreted to require that Bell and the DaLesios must furnish copies of documents to plaintiff even if such documents were provided to the grand jury by some other party. This matter raises a second concern, namely, who provided particular documents to the grand jury? If DaLesio has not produced anything thus far, he has no problem. If he has, then the issue becomes whether he has waived his Fifth Amendment privilege.

The application of a waiver is strictly limited to the *proceeding* in which that waiver is made. In other words, there is authority for the proposition that a waiver will not be presumed to be found for all times merely because an individual incriminated himself on one occasion. This conclusion rests upon a distinction between the physical act of making a waiver and the subsequent, independent use of the incriminating evidence which has been released.

For example, assume in this case that DaLesio incriminated himself before the grand jury but a formal indictment was

---

2. *Karlson v. Wolfson,* 18 F.R.D. 474 (D.Minn. 1956) (given good cause, court may compel party to produce IRS returns for inspection and copying by other party); *Tollefsen v. Phillips,* 16 F.R.D. 348 (D.Mass.1954) (where taxpayer had not kept copies of tax returns but could obtain copies from government at nominal cost, such copies were sufficiently within taxpayer's constructive possession to be subject to court order for production); *Herbst v. Able,* 63 F.R.D. 135 (S.D.N.Y.1972) (defendant had to provide transcript of testimony at private hearing for plaintiff's inspection where SEC did not object to furnishing defendant with copy).

never filed. Would a waiver in these circumstances exist forever and especially for any subsequently brought civil or criminal proceedings? According to McCormick:

> The waiver has traditionally been regarded as effective throughout *in the proceeding in which the accused testifies.* During that proceeding the privilege does not reattach if the accused physically leaves the witness stand, and he can be recalled and required to testify again if this is otherwise procedurally proper. On the other hand, *testifying in one proceeding does not affect the right to invoke the privilege in a separate and independent proceeding.* For example, an accused who testifies may not be questioned concerning an invocation of the privilege in preliminary proceedings or in an earlier trial. Nor is an accused who testifies at one trial precluded from invoking the privilege during a second trial of the same charge. Unlike the privilege of the witness, the privilege of the accused has not given rise to many questions concerning the prospective scope of a waiver. Thus, although there may be some question concerning the position of a witness, *it is unlikely that an accused waives his right to invoke the privilege at trial by voluntarily testifying before a grand jury.* Such a distinction between the accused and a witness is difficult to justify on theoretical grounds and, if made, must rest primarily on the proposition that the interests protected by the privilege are placed in greater danger when the holder is himself on trial and so the waiver doctrine will be correspondingly restricted in its application to this situation.

McCormick's Handbook of the Law of Evidence 281–82 (2d ed. Cleary 1972). (Emphasis added, footnotes omitted). This observation is supported in the cases and finds expression in Justice Holmes' remark that "[a] party is privileged from producing the evidence, but not from its production." *Johnson v. United States*, 228 U.S. 457, 458, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913).

In *United States v. Miranti*, 253 F.2d 135 (2d Cir. 1958), Chief Judge Clark held that the waiver of the privilege of self-incrimi-

nation in one proceeding does not affect the rights of a witness or accused in another independent proceeding. Similarly, the court in *United States v. Nielsen*, 392 F.2d 849 (7th Cir. 1968), held that by testifying at a voir dire hearing to determine the issue of waiver of the right to remain silent, a defendant does not relinquish the privilege to remain silent at trial.

■ There is a distinct difference between compelling someone to produce incriminating information and using that information once it has been produced from other sources. Justice Holmes' remark in *Johnson, supra,* is intended to support this point. The privilege protects a party from compulsion, not from use of evidence which, although incriminating, was obtained from another source.

The Supreme Court dealt with this issue most recently in two cases, *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), and *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). In *Fisher* the Court held that an attorney's production, pursuant to a lawful summons, of his client's tax records in his hands did not violate the taxpayer's Fifth Amendment privilege "because enforcement against a taxpayer's lawyer would not 'compel' the taxpayer to do anything—and certainly would not compel him to be a 'witness' against himself." 425 U.S. at 397, 96 S.Ct. at 1574. Having referred to Justice Holmes' remarks in *Johnson, supra,* the Court in *Andresen* reasoned that:

> This principle recognizes that the protection afforded by the Self-Incrimination Clause of the Fifth Amendment "adheres basically to the person, not to information that may incriminate him." *Couch v. United States*, 409 U.S., [322] at 328 [, 93 S.Ct. 611, 34 L.Ed.2d 548.] Thus, although the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information, see *Fisher v. United*

*States, supra,* a seizure of the same materials by law enforcement officers differs in a crucial respect—the individual against whom the search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence.

427 U.S. at 473–74, 96 S.Ct. at 2745. The Court went on to uphold the introduction of petitioner's *business* records into evidence, finding no Fifth Amendment violation in light of the nature of the records plus the fact that other prosecution witnesses, rather than petitioner, authenticated them.

Just what type of documents are involved here, however, is still unclear. The grand jury subpoenaed many documents from Bell who has declined, on Fifth Amendment grounds, to say whether these include any documents described by plaintiff's requests to produce. Deponent Ralph DaLesio has said that some of *his* financial records have been subpoenaed by the Internal Revenue Service or others. As is readily apparent, plaintiff, who is barred from piercing the secrecy of the grand jury, cannot really tell specifically what he wants produced in this civil action. The discovery request in pleading 161 is so broad that it would certainly encompass *personal* records for which defendants can invoke the privilege. Furthermore, if there *are* any discoverable business records before the grand jury, plaintiff cannot simply say "give me what you gave the grand jury." Plaintiff's discovery is, then, hindered by his inability to know what it is he is requesting. Without this knowledge, his discovery requests constitute a fishing expedition through materials produced for the grand jury, and allowing this could violate F.R.Crim.P. 6(e).

■ It is established without question that the privilege against self-incrimination may not be invoked as to corporate records. *Bellis v. United States,* 417 U.S. 85, 88–89, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). The personal nature of the privilege has long been recognized, *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and more recent decisions have stressed that the privilege should be "limited to its

historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records." *United States v. White,* 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944).

*White* is relevant because the Court held that the demand for production of official labor union records in the custody of a union officer, did not come within the scope of the privilege. Noting that official union books and records were distinct from the personal books and records of its members, the Court stated that:

The test, rather, is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only. If so, the privilege cannot be invoked on behalf of the organization or its representatives in their official capacity. Labor unions—national or local, incorporated or unincorporated—clearly meet that test.

Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. This difference is as well defined as that existing between individual members of the union. The union's existence in fact, and for some purposes in law, is as perpetual as that of any corporation, not being dependent upon the life of any member. It normally operates under its own constitution, rules and by-laws which, in controversies between member and union, are often enforced by the courts. The union engages in a multitude of business and other official concerted activities, none of which can be said to be the private undertakings of the members. Duly elected union officers have no authority to do or sanction anything other than that which the union may lawfully do; nor have they

authority to act for the members in matters affecting only the individual rights of such members. The union owns separate real and personal property, even though the title may nominally be in the names of its members or trustees. The official union books and records are distinct from the personal books and records of the individuals, in the same manner as the union treasury exists apart from the private and personal funds of the members. See *United States v. B. Goedde & Co.*, D.C., 40 F.Supp. 523, 534. And no member or officer has the right to use them for criminal purposes or for his purely private affairs. The actions of one individual member no more bind the union than they bind another individual member unless there is proof that the union authorized or ratified the acts in question. At the same time, the members are not subject to either criminal or civil liability for the acts of the union or its officers as such unless it is shown that they personally authorized or participated in the particular acts.

322 U.S. at 701–702, 64 S.Ct. at 1252–1253. *See also Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); *Dreier v. United States*, 221 U.S. 394, 31 S.Ct. 550, 55 L.Ed. 784 (1911); *Wheeler v. United States*, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913).

■■ Plaintiff's motion must be denied on grounds that it is overbroad. Furthermore, plaintiff's waiver argument is incorrect in light of the cases and authorities referred to above. Even if DaLesio provided the grand jury with incriminating material, he cannot be found to have automatically waived his Fifth Amendment privilege in this civil case. While DaLesio can continue to invoke the privilege during this proceeding in connection with discovery requests, he must still comply with all of plaintiff's outstanding discovery requests that do not involve materials for which the Fifth Amendment may be invoked. The "catch-22" in this entire matter is one inherent in the nature of discovery: defendants must turn over all discoverable business records which are not subject to the privilege, and there is really no way for plaintiff to verify their good faith. One cannot ask for something specifically until one knows what it is that he wants or does not already have. Future problems in this regard, however, will be resolved by the Court by an *in camera* inspection should plaintiff not be satisfied with the defendants' compliance.

### III. PLAINTIFF'S MOTION TO COMPEL BELL AND LANDSMAN TO PRODUCE DOCUMENTS AND ANSWER QUESTIONS (PLEADINGS 176, 188, 189).

■ Plaintiff seeks discovery from Bell and his accountant, Robert Landsman, with respect to certain corporate and financial activities of Bell and his numerous businesses. Bell is the fund administrator to the four defendant Teamster Funds in this case as well as eight other funds. Apparently, Bell turned over documents reflecting his business affairs to Landsman and now declines to produce them on the basis of the attorney-client privilege. He further refuses to provide material, documentary or otherwise, relating to his relationship with Landsman.

Plaintiff sought documents and writings from Landsman relating to Bell, his family, and his businesses. From Bell, plaintiff sought all documents relating to his administrative businesses and services to the defendant Teamster Funds. The scenario leading up to the claiming of an attorney-client privilege points out the weakness of the claim.

Plaintiff first sought to depose Landsman after two of Bell's employees stated at deposition that documents relating to Bell and his companies were routinely forwarded to Landsman, whom they described as Bell's CPA. Next, when plaintiff's counsel told Bell's counsel, Walter Dillon, that he wanted to depose Landsman, Dillon said he'd invoke the accountant-client privilege under Md. Cts. & Judic.Proc.Code § 9–110(a). Yet plaintiff's counsel informed Dillon that under Rule 501 of the Federal Rules of Evidence and the decision in *Lewis v. Capital*

*Mortgage Investments,* 78 F.R.D. 295 (D.Md.1978), the Maryland privilege was inapplicable in litigation concerning federal questions. As the *Lewis* court said with reference to Article V of the Federal Rules of Evidence, "Congress expected the federal courts to apply federal law in federal question cases," 78 F.R.D. at 313, and under federal law, no such privilege has been recognized. *United States v. Wainwright,* 413 F.2d 796 (10th Cir. 1969), *cert. denied,* 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970); *Himmelfarb v. United States,* 175 F.2d 924 (9th Cir. 1949); *United States v. Schmidt,* 343 F.Supp. 444 (M.D.Pa.1972). *See also* K. Redden & S. Saltzburg, Federal Rules of Evidence Manual 128 (1st ed. 1975).

Having discovered the inapplicability of the accountant-client privilege, Bell's counsel next invoked the attorney-client privilege, but, as plaintiff has shown, this claim amounts to a *post hoc* fabrication:

(1) Landsman never previously indicated that he had served as Bell's attorney.

(2) Landsman has only been licensed to practice law in Virginia, but since the 1950's or 1960's he has maintained his only business office in Maryland. Virginia State Bar records show him as an Associate Member (*i. e.,* not an Active Member), and Associate Members cannot practice.

(3) Landsman's other employees are accountants, not lawyers.

(4) Walter Dillon, Bell's counsel, told plaintiff's counsel that Bell's documents forwarded to Landsman were, except for documents for the past year, taken by the grand jury pursuant to subpoena. Interestingly enough, the attorney-client privilege was not raised at that time.

The Fourth Circuit, citing Wigmore, has noted that the attorney-client privilege

" * * * applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

\* \* \* \* \* \*

Wigmore teaches:

" * * * the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. * * *. It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

*N.L.R.B. v. Harvey,* 349 F.2d 900, 904, 907 (4th Cir. 1965), *citing United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357, 358 (D.Mass.1950). Furthermore, the party claiming the privilege bears the burden of sustaining its application. *See United States v. Gurtner,* 474 F.2d 297 (9th Cir. 1973); *Behrens v. Hironimus,* 170 F.2d 627 (4th Cir. 1948).

Initially there was some question as to whether Landsman had been properly served with the *subpoena duces tecum.* Proper service has now been effectuated and this Court orders that Landsman comply immediately with the *subpoena.* Having considered the affidavits provided by both Landsman and Bell, this Court is of the opinion that the claim of attorney-client privilege is without merit.

## IV. PLAINTIFF'S MOTION TO COMPEL ANSWERS TO DEPOSITION QUESTIONS ABOUT SERVICES TO NON-LOCAL 311 EMPLOYEE BENEFITS PLANS (PLEADING 175).

Plaintiff, pursuant to F.R.Civ.P. 34, seeks discovery concerning the nature of

defendant Bell's services to the eight other funds administered in addition to the four defendant Teamster Funds. Bell objects on grounds of relevancy and invokes the privilege against self-incrimination. Plaintiff replies that Bell has waived any such privilege by already having answered questions about his work for the Teamster Funds and as to how he set his fees.

This line of questioning is relevant, especially in light of the plaintiff having discovered that Bell apparently charged the Teamster Funds twice as much as he charged other similar funds for his administrative services. Plaintiff notes that Bell's close personal relationship with Leo DaLesio, together with his business relationships with Local 311 and the four Teamster Funds, may currently be under investigation by a Baltimore grand jury. Nonetheless, plaintiff claims that Bell must show a realistic rather than a remote or speculative risk of criminal prosecution resulting from this line of inquiry. *Zicarelli v. New Jersey State Comm. of Investigation,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). Plaintiff claims a waiver by Bell but on the facts currently available, it is difficult to determine this issue precisely. In his Memorandum, plaintiff notes that Bell "may also have turned over to the Baltimore grand jury certain of the information sought." If Bell only turned over information relating to the Local 311 operation, this release would probably not constitute a waiver as to documents relating to *all* of his other fund administration activities even though such information would be of relevance in this proceeding. Presumably there are other means by which plaintiff could obtain this information.

Because the issue of the fees paid to the defendant Funds is a relevant matter, the Court will grant plaintiff's motion on a limited basis. Presumably, if objections to specific questions are to be made, they can be made at the time of the deposition.

### V. MOTION FOR A PROTECTIVE ORDER (PLEADING 164).

█ Defendant Leo DaLesio seeks to avoid answering defensive interrogatories propounded by plaintiff Bloomer. By stipulation, the parties have agreed pursuant to F.R.Civ.P. 41(a)(1), that plaintiff Bloomer shall be dismissed from this proceeding and that his action against the parties shall be dismissed with prejudice. *See* pleading 177. Since the parties have agreed by stipulation that the interrogatories propounded by plaintiff Bloomer shall be considered as having been propounded by plaintiff Brink, the Court will now consider defendant DaLesio's motion for a protective order.

The interrogatories in question were propounded on October 27, 1978 (pleading 136) and read as follows:

1. Do you contend that you or your family paid fair value to Alfred Bell for ownership, use and control of the condominium at 58th and Ocean in Ocean City? Please state the date, amount and form of all consideration, to whom paid, by whom paid, and for what term and what type of use paid. Please state all facts by which you intend to prove this, and by which you intend to prove the adequacy of consideration, and, for each fact, list the names of all persons by whose testimony, and identify all documents by which, you will prove the fact.

2. Do you contend that you paid fair value to Alfred Bell for the use or control of Suite 392 at the Sheraton John Hopkins, for the use of suites, including Suite 150, at the Pikesville Hilton; and for the use of a suite at Two Charles Center? Please state the date, amount and form of consideration, to whom paid, by whom paid, and for what term and what type of use, and the purposes for which you occupied each. Please state all facts by which you intend to prove the payment of value, the adequacy of consideration, and the purposes of occupancy, and for each fact, list the names of all persons by whose testimony, and identify all documents by which, you will prove the fact.

7. Do you contend that all fees paid, directly or indirectly, by defendant Funds to Alfred Bell, Alfred Bell, Inc., Alfred M. Bell and Associates and Fund Administration, Inc. were reasonable? Please state all facts upon which you rely to support the reasonableness of each fee, and for each list the persons by whose testimony, and the documents by which, you will prove the fact.

8. Do you contend that the rents paid for occupancy, and the funds paid for renovation, of offices at 8116 Harford Road were reasonable? Please state all facts upon which you rely to support the reasonableness of each payment and, for each fact, list the persons by whose testimony, and the documents by which, you will prove the fact.

10. State all facts which justify each of the following expenditures by Local 311? For each fact, list the persons upon whose testimony, and the documents upon which, you will rely to prove the fact:

(a) The annual purchase of several season football tickets.

(b) Expenditures for trips to Detroit and environs.

(c) Telephone calls to the following numbers in Area Code 313:

931–2200; 846–8550; 366–4500; 537–7539; 965–8750; 291–9700; 881–6859; 961–2380; 365–5200; 963–1230; 963–7711; 391–3800; 693–1748; 573–7171; 946–8928; 294–8200; 941–9651; 786–3026; 548–7101; 846–9902; 545–6350; and 464–2200.

[no (d)]

(e) Memberships in, and fees at, The Hilton Inn Tennis Club, and the Perring Place Racquet Club and the Playboy Club.

(f) Expenditures in distant cities to which you did not travel at union expense.

(g) Travel expenses for your wife as well as yourself.

Defendant Leo DaLesio again invokes the Fifth Amendment insofar as answering these interrogatories is concerned and bases this right on the fact that the U.S. Attorney's Office is still investigating him.

Plaintiff's counsel (pleading 183) argues that these interrogatories are "defensive" in that plaintiff "seeks only to learn the nature of the defense DaLesio will advance during trial." Consequently, plaintiff argues that he only seeks to find out what DaLesio will be "contending" at trial. In light of the information sought plus the fact that DaLesio objected to some of these questions when they were asked at his November deposition, plaintiff's arguments lack merit. These interrogatories should, therefore, fall within the scope of the Fifth Amendment privilege as explained in Part II above. Accordingly, the motion for a protective order shall be granted.

## VI. MOTION BY PLAINTIFF TO LIFT THE SEAL ON CERTAIN DOCUMENTS (PLEADING 178, 187, 190).

Plaintiff seeks to lift the seal imposed by this Court's order of October 3, 1978, on the grounds that it is no longer warranted, will impose an unjustifiable burden upon the judicial process, and constitutes a prior restraint on freedom of expression in violation of the First Amendment.

Defendant's response is that the seal should remain as long as the investigation of DaLesio continues by the U.S. Attorney's Office:

unsealing said enumerated documents would expose that this Defendant has asserted and continues to assert his Fifth Amendment privilege as to various categories of information and documents sought from him, and exposure of said fact would be prejudicial and detrimental to this Defendant while an investigation by the United States Attorney's Office is ongoing in this District. (Pleading 187).

As long as such "good cause" is shown, F.R.Civ.P. 26(c), the Court is able to exercise wide discretion in administering pre-trial discovery. Defendant attempts to argue

that the appropriate remedy in cases where civil discovery implicates Fifth Amendment rights has been for the Court to provide a protective order postponing civil discovery until termination of the criminal investigation. *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); *London v. Patterson*, 463 F.2d 95 (9th Cir. 1972), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973). Citing *United States v. Steffes*, 35 F.R.D. 24 (D.Mont.1964), defendant claims that an individual's protection is especially appropriate where the civil and criminal proceedings arise from the same transactions.[3]

While it is certainly not necessary to terminate all discovery pending the grand jury investigation, the Court can continue to exercise its discretion in this matter, assuming the presence of good cause. The seal would apparently satisfy defendant's concerns while permitting discovery to continue; however, as plaintiff notes, there could be some First Amendment issues raised if this case goes to trial while the grand jury investigation is still pending.

Plaintiff cites the recent case *In re Adele Halkin*, No. 77–1313 filed on January 19, 1979 by the U.S. Court of Appeals for the District of Columbia, 194 U.S.App.D.C. ——, 598 F.2d 176, as support for the position that the Court's control of pre-trial discovery must be exercised in light of First Amendment considerations. The *Halkin* court held that when the district court attempts to set limits on use of discovery information already received, it must also satisfy more stringent First Amendment objectives. In a dissenting opinion, Judge Wilkey argued that:

> there is no reason to embark on an independent First Amendment analysis. If

the district court did not properly issue the order under Rule 26(c), then it is violative of statutory standards, and there is again no reason to embark on a First Amendment analysis.

194 U.S.App.D.C. at ——, 598 F.2d at 209. Characterizing the use of Rule 26(c) protective orders as constituting a possible "prior restraint," Judge Bazelon wants to guarantee certain First Amendment interests in discovery materials. Judge Bazelon enunciates three criteria by which such a restriction under Rule 26(c) should be elaborated:

> The court must then evaluate such a restriction on three criteria: the harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn and precise; and there must be no alternative means of protecting the public interest which intrudes less directly on expression.

194 U.S.App.D.C. at ——, 598 F.2d at 191 (footnotes omitted). What Judge Bazelon has done is to inject a constitutional First Amendment standard into the court's determination as to the presence of "good cause" under Rule 26(c).

Although Judge Bazelon's criteria may have created a jurisprudential controversy, there is still a fair amount of judicial flexibility and freedom in determining the variables which must flesh out his new approach. For example, in assessing the nature of the harm posed by dissemination of the information, Judge Bazelon recognized the "widely varying interests" which can be advanced to support restraining orders. 194 U.S.App.D.C. at ——, 598 F.2d at 192. When a court, however, must evaluate a protective order based on the right to a fair

---

**3.** The *Steffes* court cited *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962), for the following observation:

> The court, in some detail, made it clear that "in determining good cause for discovery in the civil suit, a determination that requires the weighing of effects, the trial judge in the civil proceeding should (not) ignore the effect discovery would have on a criminal proceeding that is pending * * *." Again, "A litigant should not be allowed to make use of

the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other."

35 F.R.D. at 26.

trial, he says that the trial judge must consider the differences between a civil versus a criminal trial and a bench versus a jury trial. 194 U.S.App.D.C. at ——, 598 F.2d at 188. With respect to the former, he writes:

> (a) Civil versus criminal trial. Although the right to a fair trial is fundamental to both civil and criminal litigation, there are important distinctions between the two in this context.
>
> [A]lthough we rightfully place a prime value on providing a system of impartial justice to settle civil disputes, we require even a greater insularity against the possibility of interference with fairness in criminal cases. Perhaps this is symbolically reflected in the Sixth Amendment's requirement of an "impartial jury" in criminal cases whereas the Seventh Amendment guarantees only "trial by jury" in civil cases.

*Chicago Council of Lawyers v. Bauer,* 522 F.2d 242, 257–58 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976).

194 U.S.App.D.C. at —— – ——, 598 F.2d at 192–193 (footnotes omitted). This remark and citation seem to provide considerable latitude for a trial judge's discretionary evaluation under Rule 26(c). Thus, since the reasons for which the seal was granted initially are still valid, the seal can still be imposed while simultaneously satisfying the established criteria.

While the *Halkin* opinion initially sounds controversial, its ultimate impact may be exaggerated. All that this approach would entail is additional scrutiny of a judge's "good cause" determination in light of First Amendment interests. While this may be jurisprudentially unsound, it will not alter present procedures assuming judges have good reasons for their orders and draft them narrowly and precisely. At most, the opinion will perhaps prompt a more reasoned and precise statement by judges in issuing Rule 26(c) orders.

Accordingly, it is this 21st day of May, 1979, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant DaLesio's motion to dismiss or limit evidence be, and the same is, hereby DENIED;

2. That plaintiff's motion to compel production of documents furnished to the grand jury be, and the same is, hereby DENIED;

3. That plaintiff's motion to compel Bell and Landsman to produce documents and answer questions be, and the same is, hereby GRANTED;

4. That plaintiff's motion to compel answers to deposition questions about services to non-Local 311 Employees Benefit Plans be, and the same is, hereby GRANTED ON A LIMITED BASIS;

5. That defendant DaLesio's motion for a protective order be, and the same is, hereby GRANTED; and

6. That plaintiff's motion to lift the seal on certain documents be, and the same is, hereby DENIED.