Jack B. **PFEIFFER**, Appellant,

v.

**CENTRAL INTELLIGENCE AGENCY and United States of America**, Appellees.

No. 94–5107.

United States Court of Appeals, District of Columbia Circuit.

Argued March 23, 1995.

Decided August 1, 1995.

Paul A. Levy, argued the cause, Washington, DC, for appellant. With him on the briefs, was Alan B. Morrison, Washington, DC.

Douglas N. Letter, Appellate Litigation Counsel, U.S. Dept. of Justice, argued the cause, Washington, DC, for appellees. With him on the brief, were Frank W. Hunger, Asst. Atty. Gen., U.S. Dept. of Justice and Eric H. Holder, Jr., U.S. Atty. Vincent M. Garvey, Counsel, U.S. Dept. of Justice, Washington, DC, entered an appearance.

Before BUCKLEY, GINSBURG, and SENTELLE, Circuit Judges.

GINSBURG, Circuit Judge:

As part of his duties as an historian employed by the CIA, Dr. Jack B. Pfeiffer wrote a report dealing with the Agency's internal investigation of the Bay of Pigs Operation. When he left the CIA Pfeiffer took a copy of that report, which he later asked the Agency to review and clear for publication. When the CIA declined, Pfeiffer brought suit in district court claiming that the Agency's refusal to undertake such a review operated as a prior restraint upon his right to speak, in violation of the First Amendment to the Constitution of the United States. The United States intervened and counterclaimed for return of Pfeiffer's copy of the report. The district court granted summary judgment in favor of the Government on both Pfeiffer's claim and the Government's counterclaim. Because Pfeiffer has no right to a copy of the document and the CIA's conduct in this case does not implicate the first amendment, we affirm the judgment of the district court.

## I. Background

Pfeiffer joined the CIA in 1955. At that time he signed a "Secrecy Agreement" stating:

I do not now, nor shall I ever possess any right, interest, title or claim, in or to any of

the information or intelligence ... which has come or shall come to my attention by virtue of my connection with the [CIA], but shall always recognize the property right of the United States of America, in and to such matters.

Pfeiffer worked for the CIA for nearly 30 years. During his last ten years there he worked on a series of historical reports on the Bay of Pigs Operation. The report at issue here deals with the Agency's internal investigation of that Operation.

On his last day at the Agency (December 28, 1984) Pfeiffer sent a memorandum to the Information and Privacy Coordinator asking him to declassify an edited version of the report pursuant to Executive Order No. 12,-356, which establishes a procedure whereby a federal agency is required to declassify material unless the agency identifies some legal ground for nondisclosure. Also on his last day at the Agency, Pfeiffer signed a "Security Reminder" that states, in part:

I have also been reminded that I am not permitted to retain any documents or other materials which are the property of the CIA or the custodial responsibility of CIA, and I affirm that I do not have in my possession, nor am I taking away from CIA any such documents or materials.

Nevertheless, Pfeiffer admits, he took a copy of the unedited version of the Bay of Pigs report with him when he left the Agency. Indeed, in a second memorandum dated December 28 Pfeiffer informed the Information and Privacy Division that he would have a draft of the report at home and would revise it as necessary—presumably for publication—in light of the Information and Privacy Coordinator's response to his request for declassification.

The Information and Privacy Coordinator denied Pfeiffer's request for declassification and the Agency rejected an appeal of that decision. Pfeiffer then attempted to secure release of the report pursuant to the Freedom of Information Act and litigation thereunder. The district court ruled that the report is exempt from disclosure as deliberative process material. *Pfeiffer v. CIA,* 721 F.Supp. 337 (D.D.C.1989) (citing 5 U.S.C. § 552(b)(5)). Pfeiffer did not appeal.

Finally, Pfeiffer asked the Agency to undertake a "prepublication review" of the report. Every current and former CIA employee is required to get Agency approval before publishing any writing that may contain or be based upon classified information that the employee obtained as a result of his service with the Agency. CIA Regulation HR 6-2 (rev. Aug. 7, 1984). While he was with the Agency Pfeiffer himself several times agreed to this procedure in writing.

The Agency responded to Pfeiffer's request by stating that its prepublication review procedure does not apply to a work created in the course of an employee's official duties, as opposed to a work that, while "prepared for nonofficial publication in [the former employee's] personal capacit[y]," might reflect information acquired through his CIA employment. In addition, the CIA warned Pfeiffer that if he had a copy of the report, his possession of it "could be a violation of criminal statutes regarding theft of Government property and/or retention of information relating to the national defense."

Pfeiffer then brought this action in district court claiming, among other things, that the CIA's refusal to review the report for publication is an unconstitutional prior restraint of his first amendment right to speak. The United States intervened as a defendant and counterclaimed for a declaration that Pfeiffer's copy of the report is the property of the United States and for an order that he return the copy to the Government. The district court eventually granted summary judgment for the Government based upon the following conclusions: (1) Pfeiffer has no right to prepublication review of a document he created in the course of his CIA employment; (2) in light of the court's decision in his FOIA suit, Pfeiffer has no right to a mandatory declassification under E.O. No. 12,356; (3) Pfeiffer has no general right of access to the report under the first amendment; (4) Pfeiffer's obligation not to disclose classified information is not unconstitutionally vague; (5) the CIA's "official information" regulation, CIA Regulation HR 10-22 (rev. Apr. 19, 1988), is not an unconstitutional prior restraint of Pfeiffer's right to speak; and (6) Pfeiffer's possession of a copy of the

report is wrongful, and he must return it to the CIA.

On appeal Pfeiffer argues relative to the Government's counterclaim (as he did in district court) that the Copyright Act of 1976 prevents the Government from asserting any proprietary interest in the report; that the CIA must review the report because he is entitled to publish the unclassified portions without fear of violating laws prohibiting the disclosure of classified information; and that because the Government sat too long upon any property claim it may have had to his copy of the report, he is now entitled to keep the copy.

The Government counters first that, pursuant to the agreements into which he entered and to CIA regulations, Pfeiffer has no right to the copy of the report in his possession and must return it to the Agency, copyright law and laches notwithstanding. Second, the Government maintains that Pfeiffer has no independent right of access to the report under the first amendment or the FOIA and therefore, once it has established that he must return his copy, has nothing to submit to the Agency for prepublication review. We agree with the Government on both points.

## II. Analysis

All of the disputed points in this case are questions of law, which we review de novo.

### A. The Government's property claim

█ Pfeiffer argues first that the district court erred in ordering him to return his copy of the report because, under a regulation in effect at the time that he left the CIA, he was allowed to retain a "reference" copy of his work. He points out that the statute concerning the procedure for disposing of federal "records" excludes from the definition of that term "extra copies of documents preserved only for convenience of reference." 44 U.S.C. § 3301. And a GSA Bulletin in effect in 1984 opined that:

[A] Government official may accumulate for convenience of reference extra copies of papers and other materials which he or she has drafted, reviewed, or otherwise acted upon. ... Government officials may be permitted to retain these extra copies, provided that retention would not (1) diminish the official records of the agency; (2) violate confidentiality required by national security, privacy, or other interests protected by law; or (3) exceed normal administrative economies.

GSA Bull. FPMR B–106 (Oct. 30, 1980). Pfeiffer claims that these provisions justify him in retaining a copy of a report that he prepared and, anticipating the obvious counterargument, that any concern over the confidentiality of the material will be dispelled if only the Agency would do a prepublication review of the document.

The provisions that Pfeiffer cites—designed, we note, primarily to prevent the loss to history occasioned by unauthorized destruction of federal records, see, e.g., 44 U.S.C. §§ 2701, 3105—actually undermine his argument. The GSA Bulletin states only that a government official "may" be allowed to retain copies of his work, and then only subject to the Government's need for the "confidentiality required by national security [etc.]." More important, indeed determinative, is the CIA regulation specifically stating that "information ... originated, received, or controlled by the Agency ... in connection with the discharge of official duties ... may not be copied or removed from the files of the Agency for any purpose except in connection with official business." HR 10–22.

Moreover, the report at issue in this case—in both its original form and in the form of Pfeiffer's copy—is indisputably the property of the Government. It was created at government expense, i.e., with government materials and on government time. See Reporters Committee for Freedom of the Press v. Vance, 442 F.Supp. 383, 387 (D.D.C.1977), aff'd, 589 F.2d 1116 (D.C.Cir.1978), aff'd in part, rev'd in part as Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). If more is needed to establish the Government's ownership, it may be found in Pfeiffer's agreement with the Agency disclaiming any personal property interest in information coming to his attention "by virtue of [his] connection with the [CIA]" and in the CIA regulation expressly asserting the

Government's property interest in any report prepared by an employee as part of his official duties. HR 10-22(a).

■ Pfeiffer asserts nonetheless that the Copyright Act of 1976 precludes the Government's assertion of any property interest because he took only a copy of the report—albeit one made at government expense. Here he points to 17 U.S.C. § 105, which provides that "[c]opyright protection ... is not available for any work of the United States Government." *See also* 17 U.S.C. § 101 (defining a "work of the United States Government" as "a work prepared by an officer or employee of the United States Government as part of that person's official duties"). The "copyright protection" denied to the Government is quintessentially the exclusive right "to reproduce the copyrighted work." 17 U.S.C. § 106. Moreover, Pfeiffer states that the Copyright Act "abolished all common law protections ... tantamount to copyright," *see* 17 U.S.C. § 301(a), thereby leaving the Government with no source of protection for "a work prepared by an officer or employee."

That the Government generally cannot prevent the reproduction of its works (classified information apart) seems a fair enough interpretation; by no stretch of the interpretive imagination, however, do the cited provisions mean that a copy of a government work cannot be the Government's property. And what the Government asserts here is not a copyright but a possessory interest in the copy Pfeiffer took with him when he left the CIA. Not only is there no inconsistency between the Government's asserted interest and the Copyright Act, the Act specifically provides: "Ownership of a copyright ... is distinct from ownership of any material object in which the work is embodied." 17 U.S.C. § 202; *see also* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 133 (1976) (this section does not "preclude[ ] the owner of a material embodiment of a copy ... from enforcing a claim of conversion against one who takes possession of the copy ... without consent"). So far as the Copyright Act is concerned, therefore, Pfeiffer has no more legal right to the copy of the report that he took from the Agency than he has to take a book from the bookstore of the Government Printing Office without paying for it.

■ That Pfeiffer must return his copy of the report is compelled also as a matter of equity; for he obtained it only by violating his fiduciary duty to the CIA. *See generally Snepp v. United States,* 444 U.S. 507, 510, 100 S.Ct. 763, 765–66, 62 L.Ed.2d 704 (1980). Even if he had reproduced the report at his own expense, that is, he was still bound by his agreements not to do so. Of course, we express no view upon the question whether a third-party who copies a government document, such as a journalist presumably unencumbered by the "extremely high degree of trust" invested in an employee of the CIA, *id.* at 507, 100 S.Ct. at 764, could likewise be required to relinquish it. *Cf. New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (Government failed to make sufficient showing to enjoin newspapers' publication of "Pentagon Papers").

Pfeiffer posits three more insubstantial reasons for not requiring him to turn over his copy of the report: that the Government has no consistent policy with regard to employees taking copies of documents; that other employees often take such documents as they leave government service; and that because he informed the CIA that he was taking a copy as he left its employ the equitable doctrine of laches bars the Agency from years later asserting for the first time a property right in the copy. Suffice it to say that anecdotal evidence about what other former employees of other government agencies have done is irrelevant to Pfeiffer's case; that Pfeiffer has done nothing to show that the CIA regularly permits departing employees to take copies of documents—indeed, all indications are to the contrary; and that one with unclean hands—and Pfeiffer's are indelibly stained by the ink of his own signature on an agreement not to take, and on a representation that he was not taking, any copies of official documents—may not assert the equitable defense of laches to bar a legal claim against him. *See, e.g., City of Reading v. Austin,* 816 F.Supp. 351, 367 (E.D.Pa.1993) ("A delay may be excused upon a showing that the party asserting the defense substan-

tially contributed to the delay through concealment, misrepresentation, unfilled promises, or any other inequitable conduct").

### B. Pfeiffer's first amendment claim

■ Pfeiffer argues that the Agency's refusal to review the report for publication amounts to the suppression of unclassified information, in violation of his first amendment right to speak. This argument depends vitally upon his having a right to the copy of the report he wants the Agency to review. (Pfeiffer implicitly acknowledges as much in his brief: "Particularly given the government's lack of any valid property claim in the report, Dr. Pfeiffer's First Amendment right to publish unclassified version of his own work must have primacy.") As we have seen, however, the Government has a valid claim to the copy, whereas Pfeiffer does not. Therefore his first amendment argument can be dispatched quickly.

Pfeiffer reasons as follows: Because the CIA would violate the first amendment if it were to refuse to review for publication a report created on his own time and from his personal recollection, *see McGehee v. Casey,* 718 F.2d 1137 (D.C.Cir.1983), presumably even if it were identical to the report at issue here, the CIA must therefore allow him to keep and publish portions of the existing report.

The CIA acknowledges that if Pfeiffer were to prepare a work, using such information as he can recall from his experience writing the report at issue in this case, then the CIA would be required to review it and to allow Pfeiffer to publish any unclassified information it might contain. Conceivably, therefore, Pfeiffer could more or less recreate the report from memory and the CIA could not prevent him from publishing what, according to Pfeiffer, is the greater part of it.

The fact remains, however, that Pfeiffer has no right to the report that he wishes to submit to the Agency. In other words, Pfeiffer is asking for more than prepublication review of a work that is merely based upon information he learned while with the CIA; he is in essence claiming a first amendment right of access to the Agency's report. Unfortunately for him, though, the Supreme Court has repeatedly stated that the first amendment entails no such right. *See, e.g., Houchins v. KQED, Inc.,* 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (first amendment gives no general right of access to government information).

The Supreme Court has been careful not to allow legitimate restrictions upon the speech of former CIA employees to operate as a system of prior restraint, *see, e.g., Snepp,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704, as have we, *McGehee,* 718 F.2d 1137. Our requiring Pfeiffer to return his copy of the report may appear from his perspective to be the same as allowing the CIA to restrain the publication of a similar report he might author in the future based upon his recollection. What Pfeiffer ignores, however, is that his inability to publish the existing report arises not from government censorship but simply from the fact that he has no report to publish. The Copyright Act may be no barrier to Pfeiffer's reproducing a Government document, and the first amendment may protect his right to speak of his unclassified experiences with the Agency (classified material apart), but no law grants him the right to keep—and therefore in this instance to publish—the papers that he purloined from the Agency.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is, in all respects,

*Affirmed.*